Filed 7/1/13

# IN THE SUPREME COURT OF CALIFORNIA

JOHN DOE,                               )
                                        )
      Plaintiff and Respondent,      )
                                        )          S191948
          v.                        )
                                        )     9th Cir. No. 09-17362
KAMALA D. HARRIS, as Attorney           )
General, etc.                           )   N.D.Cal. No. 3:07-cv-03585-JL
                                        )
      Defendant and Appellant.       )
_____)

The federal Ninth Circuit Court of Appeals, which is considering a claim by plaintiff that his plea agreement would be violated by requiring him to comply with postconviction amendments to California's Sex Offender Registration Act, Penal Code section 290 et seq.,[1] requested an answer to the following question: "Whether, under California law, the default rule of contract interpretation is (a) that the law in effect at the time of a plea agreement binds the parties, or (b) that the terms of a plea agreement may be affected by changes in law." We accepted the request and slightly rephrased the question as: "Under California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?" We respond that

_____

[1] Except as indicated, all statutory references are to the Penal Code.

1

the general rule in California is that the plea agreement will be " 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . .' " (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070 (*Gipson*).) That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.

## BACKGROUND

In 1991, plaintiff, who is proceeding under the pseudonym "John Doe," was charged with six counts of lewd and lascivious acts upon a child under the age of 14 (former § 288, subd. (a)), an offense subject to the registration requirements of former section 290 (as amended by Stats. 1989, ch. 1407, § 4, pp. 6191-6195). In August of that year, Doe entered into a plea agreement under which he agreed to plead nolo contendere to a single count in exchange for the dismissal of the others. The written change of plea form, which Doe signed, recited that the maximum penalties for Doe's conviction would be probation, participation in a work furlough program, fines, testing as required by former section 290.2, and registration as a sex offender under section 290. The superior court accepted the plea, entered judgment convicting Doe of a single count of committing a lewd and lascivious act on a child under the age of 14, and sentenced him in accordance with the plea agreement.

Doe registered as required by section 290. The statute at that time required persons convicted of specified sex offenses, including former section 288, subdivision (a), to register and to provide their fingerprints and photographs. (Former § 290, subd. (e).) It also recited: "[T]he statements, photographs, and fingerprints herein required shall not be open to inspection by the public or by any person other than a regularly employed peace or other law enforcement officer."

2

(Former § 290, subd. (i).) But the Legislature later adopted "Megan's Law" (§ 290.46, added by Stats. 2004, ch. 745, § 1, pp. 5798-5803), which among other things, provides a means by which the public can obtain the names, addresses, and photographs of the state's registered sex offenders. The Legislature further specifically and expressly mandated that the public notification provisions of the law are "applicable to every person described in this section, without regard to when his or her crimes were committed or his or her duty to register pursuant to Section 290 arose, and to every offense described in this section, regardless of when it was committed." (§ 290.46, subd. (m).) The Legislature accordingly made the public notification provisions retroactive and thus applicable to Doe's conviction.

In 2007, Doe filed a civil complaint in the United States District Court, asserting that requiring him to comply with the amended law's public notification provisions would violate his plea agreement. As explained to us by the Ninth Circuit, the district court, after hearing the testimony of the prosecutor, the defense attorneys involved in the case and Doe, found the parties had not discussed section 290 during their plea negotiations except to acknowledge Doe was required to comply with its requirements. In addition, the written change of plea form, executed when Doe changed his plea from not guilty to nolo contendere, although including a reference to Doe's obligation to register in accordance with section 290, did not state what the sex registration requirements were or what section 290 required Doe to do. And finally, neither the parties' plea negotiations, nor the change of plea form, nor the plea agreement considered or addressed the possibility future legislation might change the sex registration requirements.

The district court nonetheless concluded that publicly disclosing any of Doe's previously confidential sex offender registration information would violate the terms of Doe's plea agreement, explaining, "one cannot reasonably interpret

3

the language of the plea agreement, which reads 'P.C. 290,' to mean [anything] other than compliance with that section of the Penal Code, as it was written at the time of the plea." It found, further, that allowing Doe to withdraw his plea at "this late point in time" would be "a useless exercise." It therefore issued an injunction barring the Attorney General from disclosing Doe's information, ruling Doe was not subject to postconviction amendments to the registration requirements.

The Attorney General appealed to the Ninth Circuit, which directed its request to us, asserting that as a result of perceived inconsistencies between the decisions in *Swenson v. File* (1970) 3 Cal.3d 389 (*Swenson*) and *People v. Arata* (2007) 151 Cal.App.4th 778 and those in *In re Lowe* (2005) 130 Cal.App.4th 1405, *Gipson*, *supra*, 117 Cal.App.4th 1065, and *People v. Acuna* (2000) 77 Cal.App.4th 1056, the action presents an unsettled question of California law which could determine the outcome of the case. (*Doe v. Harris* (2011) 630 F.3d 972.)

## DISCUSSION

### I.

Our task is limited. We are not here concerned with the restrictions imposed by the federal and state Constitutions on the Legislature's power to legislate retroactively. (See, e.g., *In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 ["[R]etrospective application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract."].) For present purposes, we assume the Legislature's decision to make the amendments to the sex registration requirements retroactive comports with federal and state constitutional requirements, including due process, the prohibition against ex post facto laws, and the federal and state contract clauses that prohibit states from passing laws impairing the obligation of contracts.

4

We also do not assess the merits of the parties' factual assertions or consider whether the district court's factual findings, as explained to us by the Ninth Circuit, are supported by the evidence. (See *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 793.) We accordingly accept as true the Ninth Circuit's representation that neither the parties' negotiations nor the express terms of the plea agreement addressed whether Doe's identity would remain forever confidential or included an affirmative promise that Doe would be exempt from changes in the law affecting persons convicted of his offense.

Doe argues we must also accept as true what he characterizes as the district court's factual determination that the plea bargain contained an implied promise that the privacy protections contained in the law in effect at the time of his plea would govern his future obligations. But although the district court's determination of what the parties said, did, and subjectively believed are factual findings, its determination of the legal effect of the parties' communications and beliefs presents an issue of law. (See *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866.) Moreover, as we understand the situation, the Ninth Circuit intends to review the district court's conclusion that the plea agreement's reference to section 290 was in effect a promise that Doe would not be required to comply with any later amendments to that section. It has requested our guidance on a rule of contract interpretation to ensure its decision on that point is consistent with California law.

## II.

We turn now to the issue that does concern us: whether the rule in California is that the terms of a plea agreement incorporate existing law to the exclusion of any retroactive amendments to the law or whether, as asserted by the court in *Gipson*, *supra*, 117 Cal.App.4th at page 1070, plea bargains in California are " 'deemed to incorporate and contemplate not only the existing law but the

5

reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . .' "

The Ninth Circuit cited a possible tension between the rule stated in *Gipson*, *supra*, 117 Cal.App.4th at page 1070, and our explanation in *Swenson*, *supra*, 3 Cal.3d at page 394, that "[t]he parties are presumed to have had existing law in mind when they executed their agreement [citation]; to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions." As we will explain, the rules stated in those cases are compatible.

The parties in *Swenson* had negotiated a covenant not to compete that exceeded the scope then permitted by Business and Professions Code section 16602 and was thus, by operation of that section, "void" to the extent it exceeded statutory limitations. (*Swenson*, *supra*, 3 Cal.3d at pp. 392-394.) We rejected a claim by the plaintiffs that the scope of the covenant not to compete in the parties' agreement expanded when section 16602 was later amended to increase the permissible scope of such covenants, applying the rule that " ' "a bargain that is illegal and void by reason of a statute existing at the time of making is not validated and made enforceable by the subsequent repeal of the statute." ' " (*Swenson*, at p. 393.)

*Swenson* considered the effect of a change of the law on a commercial contract. Nonetheless, a negotiated plea agreement is a form of contract and is interpreted according to general contract principles. (*People v. Segura* (2008) 44 Cal.4th 921, 930.) Our explanation of the law in *Swenson* therefore cannot be dismissed merely because it was stated in the context of a commercial transaction. For purposes of the Ninth Circuit's inquiry, we assume without deciding that the law stated in that case may be applied in the context of a plea agreement, although

6

the specific policy identified there—avoiding uncertainty in commercial transactions—is not an issue. But *Swenson*, unlike the other cases cited to us by the Ninth Circuit, and unlike the present case, considered the effect on a contractual agreement of a change in the law that was not intended to apply retroactively. Our explanation there that the parties to a contract generally do not contemplate that subsequent law will be incorporated into their agreement must be understood in that context; it does not compel the further conclusion the parties also understand or agree that by entering into the contract they have averted the effect of retroactive legislation.

*Gipson*, unlike *Swenson*, responded to a claim that the terms of a plea agreement could not be altered through retroactive legislation. The defendant in that case pleaded guilty at a time when section 667 provided a recidivist penalty of five years for each prior serious felony conviction and a one-year enhancement for each prior prison term served. The defendant committed a felony nine years later, by which time section 667 had been amended to require the doubling of the base term for every prior serious felony conviction. The defendant, asserting that section 667 as it existed at the time of his plea had been incorporated into his plea agreement, argued that sentencing him under the amended section violated federal and state constitutional provisions prohibiting the impairment of contracts (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9). (*Gipson*, *supra*, 117 Cal.App.4th at p. 1068.) The court rejected that argument, applying the rule stated in *In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 112: "When persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . ." (See *Gipson*, at p. 1070.)

7

Both *Swenson* and *Gipson* recognize that the Legislature, for the public good and in furtherance of public policy, and subject to the limitations imposed by the federal and state Constitutions, has the authority to modify or invalidate the terms of an agreement. Our explanation in *Swenson* that, as a general rule, contracts incorporate existing but not subsequent law, does not mean that the Legislature lacks authority to alter the terms of existing contracts through retroactive legislation. Nor should it be interpreted to mean that the parties, although deemed to have existing law in mind when executing their agreement, must further be deemed to be unaware their contractual obligations may be affected by later legislation made expressly retroactive to them, or that they are implicitly agreeing to avoid the effect of valid, retroactive legislation. *Gipson* explains that the parties to a plea agreement—an agreement unquestionably infused with a substantial public interest and subject to the plenary control of the state—are deemed to know and understand that the state, again subject to the limitations imposed by the federal and state Constitutions, may enact laws that will affect the consequences attending the conviction entered upon the plea. The holdings in the cases are not inconsistent; both reflect California law. *Gipson*, however, applies here, while *Swenson* does not.

### III.

The remaining cases cited by the Ninth Circuit address a related but not identical question: whether, despite the general rule, the facts and circumstances of a particular plea agreement might give rise to an implicit promise that the defendant will be unaffected by a change in the law. Thus, even though, as we have explained, California law does not hold that the law in effect at the time of a plea agreement binds the parties for all time, it is not impossible the parties to a particular plea bargain might affirmatively agree or implicitly understand the consequences of a plea will remain fixed despite amendments to the relevant law.

8

(See, e.g., *People v. Harvey* (1979) 25 Cal.3d 754, 758; *People v. Arbuckle* (1978) 22 Cal.3d 749, 756.)

Whether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case. As explained previously, we interpret the Ninth Circuit's question to reserve to itself the question whether some representation or circumstance besides those presented to us provides support for the district court's determination that an implied promise or understanding existed here. However, in light of the nature of the Ninth Circuit's inquiry, the cases it cited, and its careful explanation that there was no affirmative agreement between the parties that Doe could avoid the effect of legislative changes to the sex registration requirements, we consider whether, as Doe contends, California law holds that prosecutorial and judicial silence coupled with a reference to a specific statute necessarily creates an implicit promise or understanding the defendant will be unaffected by amendments to that statute.

As we have said, the general rule in California is that plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. As an adjunct to that rule, and consistent with established law holding that silence regarding a statutory consequence of a conviction does not generally translate into an implied promise the consequence will not attach,[2] prosecutorial and judicial

---

[2]    See, e.g., *People v. Villalobos* (2012) 54 Cal.4th 177, 185-186 (failure to address the amount of a restitution fine in plea negotiations or during the plea colloquy does not make the imposition of such a fine a violation of the plea agreement); *People v. McClellan* (1993) 6 Cal.4th 367, 379 (trial court's failure to advise the defendant of his statutory obligation to register as a sex offender,

*(footnote continued on next page)*

9

silence on the possibility the Legislature might amend a statutory consequence of a conviction should not ordinarily be interpreted to be an implied promise that the defendant will not be subject to the amended law.

The decision in *In re Lowe*, *supra*, 130 Cal.App.4th 1405, is consistent with this rule. The court in that case rejected a defendant's argument that section 3041.2, which confers authority on the Governor to review parole decisions, did not apply to him because that authority did not exist at the time of his plea agreement. (*Lowe*, at p. 1425.) The court, finding no affirmative promises had been made to the defendant about the person or persons who would determine his parole suitability, concluded there had been "no violation of general contract law, no violation of the plea bargain, and no violation of due process on the basis the Governor was permitted to exercise his discretionary review power in this case." (*Ibid.*) The court thus concluded that the plea agreement's silence on the matter did not translate into an implied promise the defendant would be unaffected by a change in the law.

In *People v. Acuna*, *supra*, 77 Cal.App.4th 1056, the defendant pleaded guilty to committing a lewd act on a child under the age of 14 (§ 288, subd. (a)) and was sentenced to probation. At the time of the plea, a person found guilty of that offense was entitled to the benefit conferred by former section 1203.4, which allowed a defendant sentenced to probation, and who successfully completed that probation, to withdraw the plea and have the case dismissed, thus expunging the offense from his or her record. The defendant successfully completed probation, but by that time section 1203.4 had been amended to make expungement

_____

*(footnote continued from previous page)*

although error, did not transform the court's error into a term of the parties' plea agreement).

10

unavailable to persons who had been convicted of the defendant's offense. The court rejected the defendant's claim that application of the amended statute to him deprived him of the benefit of his plea bargain: "Acuna points to no express provision in his plea bargain that mentions expungement. He cites *Sharpe v. Arabian American Oil Co.* (1952) 111 Cal.App.2d 99, 102 [244 P.2d 83] for the proposition that a missing portion of an agreement will be implied where the missing portion was 'so clearly a part of [the parties'] understanding that the agreement would be unworkable without it . . . .' But expungement was neither clearly part of the parties' understanding nor was the agreement unworkable without it. Even without expungement Acuna received a substantial benefit from his plea bargain by avoiding a prison sentence." (*Acuna*, at p. 1062.) The court's holding, like the holding in *In re Lowe*, *supra*, 130 Cal.App.4th at page 1425, is consistent with a rule that the absence of any discussion during plea negotiations of the possibility of changes to the law does not translate into an agreement the defendant will be unaffected by statutory amendments.

In the last of the cases cited by the Ninth Circuit, *People v. Arata*, *supra*, 151 Cal.App.4th 778, the defendant, like the defendant in *Acuna*, had pleaded guilty to committing a lewd act on a child under the age of 14 on the understanding he would receive probation. He successfully completed probation and, like the defendant in *Acuna*, sought expungement of his conviction under the version of section 1203.4 existing at the time he entered his plea, arguing that denying him the relief provided by that section would violate his plea bargain. The court, observing that this court in *People v. Harvey*, *supra*, 25 Cal.3d 754, and *People v. Arbuckle*, *supra*, 22 Cal.3d 749, recognized plea agreements may include implied terms, found: "Section 1203.4 relief is part of the bargain made with a probationer. [Citation.] By agreeing to give defendant probation, the plea bargain implicitly included the promise of section 1203.4 relief as part of

11

probation." (*Arata*, at p. 787.) The court distinguished *Acuna*, finding that unlike the situation there, the circumstances attending Arata's plea established that the promise of expungement was a part of the parties' understanding and had provided a significant inducement for the plea. (*Arata*, at p. 788.)

The court in *Arata* did not find that as a general rule any law in effect at the time of a plea agreement becomes a term of the agreement, nor did it find that the parties to a plea agreement implicitly agree or understand the defendant will be unaffected by changes in the law. After considering the circumstances present there, the court reasoned that the parties understood that the defendant's decision to plead guilty was motivated by a specific statutory benefit available only to persons sentenced to probation, and thus had implicitly agreed the defendant would receive that benefit. (*People v. Arata*, *supra*, 151 Cal.App.4th at p. 787.) We are not called upon here to review the merits of the court's reasoning, as the situation here is not the same. Unlike the statute at issue in *Arata*, section 1203.4, section 290 has at all relevant times treated probationers and nonprobationers alike. It therefore could not have provided Doe an inducement to plead nolo contendere as a means of obtaining a benefit available only to persons receiving probation.

In sum, the rule in California is that a plea agreement's reference to a statutory consequence attending a conviction, even when coupled with prosecutorial and judicial silence on the possibility the Legislature might amend the statute, does not give rise to an implied promise that the defendant, by pleading guilty or nolo contendere, will be unaffected by a change in the law.

12

## CONCLUSION

For the reasons we have explained, the general rule in California is that a plea agreement is " 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . .' " (*Gipson*, *supra*, 117 Cal.App.4th at p. 1070.)  It follows, also as a general rule, that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction.  To that extent, then, the terms of the plea agreement can be affected by changes in the law.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

**DISSENTING OPINION BY KENNARD, J.**


The United States Circuit Court of Appeals for the Ninth Circuit has asked this court to answer a question of California law. As rephrased by this court, the question is this: "Under California law of contract interpretation, as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?"

Today, this court's majority holds that "requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement." (Maj. opn., *ante*, at p. 13.) This broad language means that new changes in the law must be followed even though they were not contemplated by the parties when they negotiated the terms of their agreement, which is a form of contract. I do not share the majority's view. I would hold that only if the new legislation does *not materially* affect the plea agreement's terms can the parties be required to comply with the new law. Put differently, a legislative change in the applicable law binds the parties unless the new law so alters the plea agreement that, had the parties known of it at the time of the plea, one or both would not have entered into the agreement. Because I would answer the Ninth Circuit's question differently than the majority, I dissent.

1

# I

In 1991, John Doe was charged with six counts of lewd and lascivious acts on a child younger than 14 years. (Pen. Code, § 288, subd. (a) (all further statutory references are to this code).) Later that year, he pled guilty to one of the counts in exchange for dismissal of the other five. Under the agreement, Doe was placed on probation and required to register as a sex offender. (§ 290.) At the time of the plea, Doe's counsel correctly advised him that, under then existing law, the registration information would be available only to law enforcement officers, *not* the general public. (See former § 290, subd. (i), as amended by Stats. 1989, ch. 1407, § 4, pp. 6191-6195.) The parties did not discuss the possibility of any future law altering the confidentiality of the registration information.

In 1994, three years after the plea negotiations here, the California Legislature required the state Department of Justice to maintain a telephone number that members of the public could call to find out whether a particular person was registered as a sex offender. (Former § 290.4, added by Stats. 1994, ch. 867, § 4, p. 4396.) And in 2004, the Legislature required the state Attorney General to create a publicly accessible Web site containing the name, address, and photograph of anyone who, having been convicted of certain sex crimes (including the one to which plaintiff Doe pled guilty), had to register as a sex offender. (§ 290.46, added by Stats. 2004, ch. 745, § 1, pp. 5798-5803.) The latter statute, by its express terms, applies retroactively to anyone who, like plaintiff Doe here, had to register as a sex offender before enactment of the new law. (§ 290.46, subd. (m).)

Doe filed a complaint in federal district court, alleging that public disclosure of his status as a convicted sex offender breached the terms of his plea bargain, thereby violating his right to due process under the federal Constitution's Fourteenth Amendment. (See 42 U.S.C. § 1983.) After the court enjoined the state Attorney General from disclosing to the public plaintiff's status as a sex

offender, the Attorney General appealed to the Ninth Circuit, which, before deciding the case, asked this court to determine the applicable state law.

## II

A plea agreement negotiated in a criminal case is a form of contract, and therefore it is interpreted according to general contract principles. A trial court's acceptance of the agreement binds the court as well as the parties to the agreement. (*People v. Segura* (2008) 44 Cal.4th 921, 930-931 (*Segura*).)

Helpful here is this court's decision in *Swenson v. File* (1970) 3 Cal.3d 389 (*Swenson*). At issue there was whether the enforceability of a covenant not to compete, contained in a partnership agreement signed by partners in an accounting firm, should be determined by the law in effect when the agreement was executed, or when a departing partner breached it. The former, *Swenson* held, was the proper answer. "[L]aws enacted subsequent to the execution of an agreement," *Swenson* said, "are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." (*Swenson*, *supra*, 3 Cal.3d at p. 393.) The court explained: "The parties are presumed to have had existing law in mind when they executed their agreement [citation]; to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions." (*Id.* at p. 394; see also *Alpha Beta Food Markets v. Retail Clerks Union* (1955) 45 Cal.2d 764, 771 [" '[A]ll applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it . . . as if they were expressly referred to and incorporated.' "].)

The holding in *Swenson* that laws enacted after a contract is signed ordinarily do not become part of the contract reflects the views of other state courts. (See 11 *Williston on Contracts* (4th ed. 2012) § 30:23, pp. 289-290 [citing

3

numerous cases holding that "as a rule of construction, changes in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been the intention of the parties"]; 17A Am.Jur.2d. (2004) Contracts, § 372, p. 360 [stating the generally accepted view that "statutes . . . enacted subsequent to the execution of a contract, which add burdens or impair the obligations of the contract, may not be deemed to be a part of the agreement unless the language of the agreement clearly indicates this to have been the intention of the parties"].)  That general principle of contract law is equally applicable to a plea agreement in a criminal case, as such an agreement is a contract and therefore governed by general principles of contract law.  (See p. 3, *ante*.)  Like the parties to any other contract, the parties to a plea agreement are, to borrow a phrase from *Swenson*, "presumed to have had existing law in mind when they executed their agreement." (*Swenson*, *supra*, 3 Cal.3d at p. 394.)  Thus, "to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent . . . ." (*Ibid.*)

The majority here distinguishes *Swenson*, *supra*, 3 Cal.3d 389: "*Swenson*, unlike . . . the present case, considered the effect on a contractual agreement of a change in the law that *was not intended to apply retroactively*.  Our explanation there that the parties to a contract generally do not contemplate that subsequent law will be incorporated into their agreement must be understood in that context . . . ." (Maj. opn., *ante*, at p. 7, italics added.)  Retroactive legislative changes, the majority concludes, bind the parties to a contract, and hence also bind the parties to a plea agreement.  I disagree.

Central to the holding in *Swenson*, *supra*, 3 Cal.3d 389, is the recognition that because parties to a contract generally do not contemplate that later law will be incorporated into their agreement, the new law should not become part of the

4

earlier executed agreement.  (See 11 *Williston on Contracts*, *supra*, § 30:19, p. 274 [" '[T]he courts, in construing the existing law as part of the express contract . . . are merely construing the contract in accordance with the intent of the parties.' "].)  That general principle applies to any contract, irrespective of whether a later change in the applicable law is prospective or retroactive.

According to the majority here:  "Our explanation in *Swenson*[, *supra*, 3 Cal.3d 389,] that, as a general rule, contracts incorporate existing but not subsequent law, does not mean that the Legislature lacks authority to alter the terms of existing contracts through retroactive legislation."  (Maj. opn., *ante*, at p. 8.)  But the question here is not whether the Legislature has such authority; rather, the question presented is whether such a change will " 'bind the parties' " (see p. 1, *ante*).  It may well be that the Legislature's retroactive alteration of a term of a contract will invalidate that contract.  For example, if two lawyers enter into an agreement that includes a fee-splitting provision, and the Legislature thereafter retroactively makes such provisions illegal, the entire agreement may become unenforceable.  Similarly, if retroactive legislation significantly alters the terms in a plea agreement, the alteration may invalidate the entire agreement.  (In that case, the guilty plea should be vacated and any dismissed charges should be reinstated.)[1]

### III

When a new law alters the terms of an executed plea agreement, the continuing enforceability of the agreement depends, in my view, on whether the alteration is *material*.  As this court recently said, once a plea agreement has been accepted by the trial court, "material terms of the agreement cannot be modified

---

[1]   Here, the federal district court ordered the California Attorney General not to disclose plaintiff Doe's status as a registered sex offender to the general public.  The propriety of that remedy is not before this court, and I express no view on it.

without the parties' consent." (*People v. Martin* (2010) 51 Cal.4th 75, 80; see also *Segura*, *supra*, 44 Cal.4th at p. 935 [because "the term of incarceration . . . constitutes a material term of[] the parties' agreement . . . the jail term is not subject to subsequent modification without the consent of *both* parties"].) But when is a term in a plea agreement "material"? That question has so far not been addressed by this court. (See *Segura*, *supra*, 44 Cal.4th at p. 935, fn. 10 ["We need not determine as a general matter what constitutes a material term of a plea agreement . . . ."].)

In my view, a term in a plea agreement is material if it is essential to a party's decision to enter into the agreement. Likewise, a criminal defendant who is misadvised as to the consequences of a guilty plea can obtain relief only by showing "that the defendant would not have entered the [bargained - for] plea of guilty had the trial court given a proper advisement." (*In re Moser* (1993) 6 Cal.4th 342, 352; see also *Williams v. Puccinelli* (1965) 236 Cal.App.2d 512, 516 [A contract is subject to rescission " 'where there is a harmful mistake as to some basic or material fact which induced the plaintiff to enter into it. [Citations.] . . . It must affect in some material way one of the essential elements of the contract, . . . so that . . . the complaining party would not have entered into it except for his mistaken belief.' "].) My definition of materiality also reflects a standard legal dictionary's definition of "material" as meaning "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." (Black's Law Dict. (9th ed. 2009) p. 1066, col. 1.) I would therefore answer the Ninth Circuit's question by saying that a change in the law binds the parties to a plea agreement unless the change is so significant that, had the parties known of it at the time of the plea, one or both parties would not have entered into the agreement.

KENNARD, J.

6

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Doe v. Harris

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S191948
**Date Filed:** July 1, 2013

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Riordan & Horgan, Dennis P. Riordan, Donald M. Horgan, Michael Romano and Gary Dubcoff for Plaintiff and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Peggy S. Ruffra, Deputy Attorneys General, for Defendant and Appellant.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Dennis P. Riordan
Riordan & Horgan
523 Octavia Street
San Francisco, CA  94102
(415) 431-3472

Peggy S. Ruffra
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-1362