Filed 6/23/16  P. v. Lambert CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050662 |
| v. | (Super. Ct. No. C-80413) |
| LAWRENCE OLAN LAMBERT, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Christopher Evans, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Charles R. Khoury Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 1990, Lawrence Olan Lambert pleaded guilty to violating Penal Code section 288, subdivision (a).[1] Twenty-two years later, he moved to withdraw his guilty plea pursuant to section 1203.4.

Although section 1203.4 generally allows a defendant who successfully completes probation to withdraw his or her guilty plea and to have the charges dismissed, the Legislature amended the statute in 1997 to exclude certain offenders (including violators of § 288) from eligibility for relief. (Stats. 1997, ch. 61, § 1.) Therefore, on November 30, 2012, the court denied defendant's section 1203.4 motion.

In a prior appeal, we reversed the court's November 30, 2012 order and remanded the matter for an evidentiary hearing on whether the parties to the plea bargain affirmatively agreed or implicitly understood defendant would be entitled to section 1203.4 relief despite the subsequent amendment of the statute. (*People v. Lambert* (Feb. 4, 2014, G047913) [nonpub. opn.] (*Lambert I*).)[2]

On remand, the court found no evidence of such an express or implied agreement and, on July 11, 2014, again denied defendant's motion. Defendant now appeals from the court's July 11, 2014 order. He contends: (1) the court's application of section 1203.4 (as amended subsequent to his plea) to deny his motion violated the ex post facto clauses of the federal and state Constitutions; (2) such application violated the contract clause of the federal Constitution; and (3) the court erred by finding no evidence of an agreement between the parties that he would be entitled to section 1203.4 relief notwithstanding a subsequent amendment of the statute. We disagree with defendant's contentions and affirm the court's order.

---

[1] All statutory references are to the Penal Code.

[2] We granted defendant's motion for judicial notice of the *Lambert I* record.

FACTS

In 1990, defendant pleaded guilty to six counts of lewd acts upon a child under 14 years old.  (§ 288, subd. (a).)  The court sentenced him to three years of probation on condition he serve one year in jail.

In August 2012, defendant moved under section 1203.4 to withdraw his guilty plea and to set aside all associated penalties and disabilities.[3]  Defendant stated he did not recall whether section 1203.4 was discussed as part of his plea bargain (*Lambert I*, *supra*, G047913), but declared he "believed" he would be entitled to relief under the statute if he successfully completed probation.  His trial counsel declared that, although he did not specifically recall whether he had advised defendant of the availability of section 1203.4 relief, his custom and practice was to advise his probation-eligible clients of such relief and that it was a benefit of accepting probation.

In November 2012, the court denied defendant's motion solely on the ground the 1997 amendment to section 1203.4 applied retroactively to exclude him from relief thereunder.  In *Lambert I*, *supra*, G047913, we reversed the court's November 2012 order and remanded the matter for an evidentiary hearing on whether the parties to the plea agreement expressly agreed or implicitly understood that defendant would be entitled to section 1203.4 relief despite the statute's later amendment.

 On remand, in July 2014, the court conducted an evidentiary hearing. Defense counsel stated she had "no additional information" to offer, although she reminded the court of the declaration of defendant's trial counsel (Mr. Lloyd) concerning his custom and practice of advising probation-eligible clients of the availability of section 1203.4 relief.  Defense counsel argued that when the plea agreement was reached, the attorneys and the court took actions based on the "state of the law at the time . . . ."  She

---

[3]    Defendant acknowledged that, even if he were granted section 1203.4 relief, he would still be required to register as a sex offender pursuant to section 290.

3

asked the court, based on "those circumstances and the facts and the state of the law," to find an implied agreement.

The prosecutor countered that, despite defendant's private conversation with his trial counsel, *the People* had not entered into an agreement with him.

The court denied defendant's motion, finding no evidence of an affirmative agreement or implied understanding between the parties. The court noted that Lloyd's declaration did not appear to be evidence "of an implicit understanding between the parties, just perhaps of Mr. Lloyd."

DISCUSSION

*The Court's Retroactive Application of Amended Section 1203.4 Did Not Violate the Prohibition Against Ex Post Facto Legislation*

Defendant contends the court's application of amended section 1203.4 to deny his motion violated the constitutional prohibition against ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)

An appellate court has held otherwise. *People v. Acuna* (2000) 77 Cal.App.4th 1056 (*Acuna*) upheld, against an ex post facto challenge, the trial court's retroactive application of amended section 1203.4 to deny relief to the defendant, who had pleaded guilty to violating section 288. (*Id.* at pp. 1058-1059.) *Acuna* explained that the ex post facto clauses of the federal and California Constitutions prohibit, inter alia, "any law that retroactively increases the *punishment* for a criminal act." (*Id.* at p. 1059, italics added.)[4] The test for what constitutes "punishment" for ex post facto purposes "is,

---

[4] *Calder v. Bull* (1798) 3 U.S. 386, 390 identified four types of ex post facto laws: "1st. Every law that [retroactively] makes an action . . . criminal; and punishes such action. 2nd. Every law that aggravates a [previously committed] crime . . . . 3rd. Every law that . . . inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that [retroactively] alters the legal rules of evidence, and receives less, or different, testimony . . . , in order to convict the offender."

4

'whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent.'" (*Id.* at p. 1059.)

Applying that test, *Acuna* concluded, first, that the Legislature's intent "in prohibiting expungement [of a section 288 conviction] is not punishment but public safety," because "public safety is enhanced if those having been convicted of child molestation are not able to truthfully represent that they have no such conviction." (*Acuna*, *supra*, 77 Cal.App.4th at p. 1060.)

Second, *Acuna* explained that the statutory amendment was not so punitive as to be considered punishment, because the amendment deprived child molesters only of a very limited relief. (*Acuna*, *supra*, 77 Cal.App.4th at p. 1060.) Under former section 1203.4, child molesters whose convictions were dismissed remained subject to numerous disabilities: "Expungement would not relieve [the defendant] of the duty to register as a sex offender. [Citation.] Nor would it prevent the use of the conviction as a prior conviction. [Citation.] [The defendant] would still have to disclose the conviction in applying for a professional license [citation], or in an application for a public office [citation]. Nor would [the defendant] be able to own or possess a firearm capable of being concealed."[5] (*Acuna*, at p. 1060.) Nonetheless, "[t]here is no doubt that being unable to expunge [the defendant's] conviction places some burden on him. He cannot truthfully represent to friends, acquaintances and private sector employers that he has no conviction. But such a representation from a person convicted of molesting a child might give the public a false sense of security. It is this false sense of security the statute seeks

---

[5] Nor does section 1203.4 reinstate a defendant's revoked or suspended driver's license or professional license, or make him or her eligible for employment by a school. (*People v. Frawley* (2000) 82 Cal.App.4th 784, 791.) In sum, section 1203.4 does not provide for true "expungement" of a conviction (*Frawley*, at pp. 790-791), since the "limitations on [its] relief are numerous and substantial" (*id.*, at p. 791).

to eliminate. . . . [T]he statute here is no more onerous than is necessary to achieve its purpose." (*Ibid.*)

Consequently, *Acuna* concluded the 1997 amendment of section 1203.4 did not violate the ex post facto clause. (*Acuna*, *supra*, 77 Cal.App.4th at p. 1060.)

Similarly, in *People v. Ansell* (2001) 25 Cal.4th 868, our Supreme Court upheld, against an ex post facto challenge, the trial court's retroactive application of an amendment to section 4852.01.[6] (*Ansell*, at pp. 871-872.) The amendment made a certificate of rehabilitation unavailable to certain sex offenders. (*Id.* at p. 871.) A certificate of rehabilitation and/or a resulting pardon from the Governor removes or alleviates many more disabilities than does a section 1203.4 dismissal of a conviction.[7] (*Ansell*, at pp. 872-873, 877.) Nonetheless, our Supreme Court concluded that the amendment of section 4852.01 did not increase "punishment in violation of the ex post facto clause." (*Ansell*, at p. 872.) *Ansell* stated: "This court has . . . rejected ex post facto challenges to laws regulating the public safety risks posed by convicted sex offenders. We have consistently found that such statutes are not punitive in purpose or effect even where they place substantial burdens on persons who committed pre-enactment crimes." (*Id.* at p. 886.)

But defendant points out that both *Acuna* and *Ansell* predate the residency restrictions imposed on registered sex offenders.[8] He asserts those restrictions are clearly

---

[6] The Legislature amended sections 4852.01 and 1203.4, effective January 1, 1998, to exclude certain offenders from their ambit. (Stats. 1997, ch. 61, §§ 1, 2.)

[7] For example, a certificate of rehabilitation may alleviate impediments to licensure and relieve less serious sex offenders from registration requirements (*Ansell*, *supra*, 25 Cal.4th at p. 877 & fn. 17), and the Governor's pardon prevents witness impeachment on the basis of the conviction and restores eligibility for employment as a parole or probation officer and the right to possess firearms (*id.* at p. 877, fn. 16).

[8] Proposition 83, which imposed such residency restrictions, was adopted by the voters in 2006. (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048 (*Mosley*).)

punitive. Not only is this argument irrelevant (since § 1203.4 relief does not eliminate the residency restrictions),[9] but our Supreme Court has held the residency restrictions are *not* punishment for constitutional purposes, but are rather "a legitimate, nonpunitive regulatory device." (*Mosley*, *supra*, 60 Cal.4th at p. 1050.)

In sum, the court's retroactive application of amended section 1203.4 did not violate the ex posto clause.

*The Court's Retroactive Application of Amended Section 1203.4 Did Not Violate the Federal Contract Clause*

Defendant contends the retroactive application to him of amended section 1203.4 violated the contract clause of the federal Constitution. (U.S. Const., art. I, § 10.) He argues the contract clause "limits a state's ability to unilaterally and retroactively alter the terms of an existing plea agreement." He asserts our Supreme Court in *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*), and the Court of Appeal in *People v. Gipson* (2004) 117 Cal.App.4th 1065 (*Gipson*), both relied on an outdated "absolutist view of the reserved powers doctrine adopted by" the Supreme Court in *Home Building & Loan Assn. v. Blaisdell* (1934) 290 U.S. 398 (*Blaisdell*), which the Supreme Court has since "repudiated" (in defendant's view) in the more recent case of *United States Trust Co. of New York v. New Jersey* (1977) 431 U.S. 1 (*United States Trust*).

Contrary to defendant's assertion, *United States Trust* relied on *Blaisdell* and called it "the leading case in the modern era of Contract Clause interpretation." (*United States Trust*, *supra*, 431 U.S. at p. 15.) *United States Trust* explained: "[T]he Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties. [Citations.] Yet the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting

---

[9]     Section 1203.4 relief does not eliminate the section 290 registration requirement to which the section 3003.5 residency restrictions are attached. (§ 290.007.)

legislation with retroactive effects." (*Id.* at p. 17.) "Although the Contract Clause appears literally to proscribe 'any' impairment, [the Supreme] Court observed in *Blaisdell* that 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.' [Citation.] Thus, a finding that there has been a technical impairment is merely a preliminary step in resolving the more difficult question whether that impairment is permitted under the Constitution. In the instant case, as in *Blaisdell*, we must attempt to reconcile the strictures of the Contract Clause with the 'essential attributes of sovereign power,' [citation], necessarily reserved by the States to safeguard the welfare of their citizens." (*United States Trust*, at p. 21.) Thus, *United States Trust* stated "an impairment may be constitutional if it is reasonable *and* necessary to serve an important public purpose." (*Id.* at p. 25, italics added.) Applying that test, *United States Trust* concluded the New Jersey and New York Legislatures' repeal of a statutory covenant violated the contract clause because the repeal was neither necessary nor reasonable. (*Id.* at pp. 9, 14, 29, 32.) This holding, however, did *not* repudiate *Blaisdell's* reserved powers doctrine, so as to cast doubt on the holdings in *Gipson* and *Doe*.

In *Gipson*, the defendant claimed the Three Strikes provisions under which he was sentenced (as amended subsequent to the plea bargain underlying his prior strike) violated the contract clause. (*Gipson*, *supra*, 117 Cal.App.4th at pp. 1068-1070.) *Gipson* explained that "contracts are 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . .'" (*Id.* at p. 1070.) *Gipson* rejected the defendant's contract clause challenge because the Three Strikes law "and its amendments were enacted for the public good and in pursuance of public policy." (*Gipson*, at p. 1070.)

8

In *Doe*, *supra*, 57 Cal.4th at page 68, our Supreme Court clarified that its task did not extend to a constitutional analysis,[10] but was instead limited to the question of whether the terms of a plea agreement incorporate only the law existing at the time, "or whether, as asserted by the court in *Gipson*, *supra*, 117 Cal.App.4th at page 1070, plea bargains in California are '"deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . ."'" (*Id*. at p. 69.) *Doe* held plea bargains do incorporate the state's reserve power to amend the law, citing *Gipson*. (*Doe*, at p. 73.)[11]

The Legislature amended section 1203.4 to enhance public safety (*Acuna*, *supra*, 77 Cal.App.4th at p. 1059), i.e., for the public good. Defendant does not claim the amendment was unreasonable within the meaning of the test recognized in *United States Trust*. Rather, defendant argues, unpersuasively (as discussed above), that *United States Trust* "abrogated" the reserved powers doctrine as to contracts to which the State is a party. In sum, defendant has failed to show the retroactive application of amended section 1203.4 to his motion violated the federal contract clause.

---

[10] Although *Doe* examined only the law of contract interpretation (*Doe*, *supra*, 57 Cal.4th at p. 66), defendant discusses the opinion with respect to his contract clause challenge to the court's order.

[11] *Doe* explained, however, that "despite the general rule, the facts and circumstances of a particular plea agreement might give rise to an implicit promise that the defendant will be unaffected by a change in the law" and that "[w]hether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Doe*, *supra*, 57 Cal.4th at p. 71.)

Grady v. North Carolina *Does Not Support Defendant's Constitutional Challenges to the Court's Order*

Defendant argues *Grady v. North Carolina* (2015) __ U.S. __ [135 S.Ct. 1368] (*Grady*) "is a clear foreshadowing, if not more," that sex offender registration is criminal in nature, and therefore the ex post facto and contract clauses prohibit the retroactive application of amended section 1203.4.

*Grady* explained that the characterization of an investigation or inspection as a "search" within the meaning of the Fourth Amendment does *not* hinge on whether it is civil or criminal in nature. (*Grady*, *supra*, 135 S. Ct. at p. 1371.) Accordingly, *Grady* held that North Carolina's satellite-based monitoring system of recidivist sex offenders, although civil in nature, constituted a search for purposes of the Fourth Amendment because it was designed to obtain information by physically intruding on a subject's body (*ibid*.).

The issue here, however, is not whether a search occurred within the meaning of the Fourth Amendment.[12] And, in any event, defendant's argument is irrelevant since section 1203.4 relief does not eliminate the registration requirement.

*The Court Properly Found No Evidence of an Express or Implied Agreement*

Defendant contends the court violated *Santobello v. New York* (1971) 404 U.S. 257 (*Santobello*) by finding no evidence the parties to the plea bargain agreed (affirmatively or impliedly) that he would be entitled to section 1203.4 relief upon

---

[12] As framed by defendant's *Grady* argument, the ex post facto question would be whether the registration requirement imposes increased punishment on defendants, which courts have answered in the negative. (*Smith v. Doe* (2003) 538 U.S. 84, 89, 105-106 [Alaska Sex Offender Registration Act is nonpunitive and its retroactive application does not violate ex post facto clause]; *People v. Castellanos* (1999) 21 Cal.4th 785, 796 [registration requirement "does not constitute punishment for purposes of ex post facto analysis"]. For contract clause purposes, the question would be whether the registration requirement is reasonable and necessary to serve an important public purpose. (*United States Trust*, *supra*, 431 U.S. at p. 25.) Defendant does not address this question at all and has therefore waived the argument.

successfully completing probation. He offers the following as evidence of such an agreement: First, the probation report prepared prior to his plea stated he did not "'need[] imprisonment'" (such that, apparently, the People's promise he would receive probation was *not* the main motive for his guilty plea);[13] second, he declared that he believed he would be eligible for section 1203.4 relief; and third, his trial counsel declared that he routinely advised clients of the availability of section 1203.4 relief.

In *Santobello*, the United States Supreme Court vacated a judgment and remanded the case for reconsideration, because the prosecution broke its promise to the defendant to abstain from recommending a sentence if he pleaded guilty. (*Santobello*, *supra*, 404 U.S. at pp. 257-259, 263.) The high court explained that plea bargaining "presuppose[s] fairness in securing agreement between an accused and a prosecutor." (*Id.* at p. 261.) "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Id.* at p. 262.)

Here, the record supports the court's finding that no evidence showed the prosecutor made any promises (express or implied) to defendant. For purposes of *Santobello*, absent the *prosecution's* breaking a promise, it is immaterial that defendant himself believed he would be entitled to section 1203.4 relief or that his trial counsel advised him that such relief would be available. Thus, there was no *Santobello* error.

Alternatively, defendant argues "the implicit promise of [section] 1203.4 relief is contained in the act of probation itself," relying on *People v. Johnson* (1955) 134 Cal.App.2d 140 (*Johnson*) and *People v. Arata* (2007) 151 Cal.App.4th 778 (*Arata*).

*Johnson* stated: "The granting of probation, aside from being an act of clemency extended to one who has committed a crime, is also in substance and effect a

---

[13] We draw this latter inference from defendant's argument, although we note it runs counter to the pre-plea circumstances that defendant "'definitely want[ed] to "stay out of prison"'" and "was '"terrified of jail."'" (*Lambert I*, *supra*, G047913.)

11

bargain made by the People, through their Legislature and courts, with the malefactor. [S]ections 1203 et seq., dealing with the subject of probation, provide in effect that in granting probation the People of the State, speaking through their courts, may say to one who has committed a crime, 'If you will comply with these requirements you shall be entitled to this reward.' . . . Removal of the blemish of a criminal record is the reward held out through the provisions of . . . section 1203.4, as an additional inducement." (*Johnson*, *supra*, 134 Cal.App.2d at p. 143.)

Thus, according to defendant's view of the *Johnson* case, whenever the People agree to probation as part of a plea bargain, they impliedly promise the defendant the availability of section 1203.4 relief. But *Johnson*, a 1955 opinion, predates the 1997 statutory amendment which excluded some probationers from section 1203.4 relief, and thus had no occasion to consider the effect of the amendment on the existence of an implied promise as to the excluded probationers.

Furthermore, the quoted passage from *Johnson* is dictum. The issue in *Johnson* was whether the trial court erred when, in ruling on the defendant's section 1203.4 motion, it considered evidence of a crime he had committed seven months *after* his successful completion of probation. (*Johnson*, *supra*, 134 Cal.App.2d at pp. 142-143.) *Johnson* concluded the court had erred because section 1203.4 requires only that a defendant have fulfilled the probation conditions for the entire probationary period, and because no law authorized "retroactive punishment for wrongdoing subsequent to the expiration of the probationary period." (*Johnson*, at p. 144.) The *Johnson* court was not tasked with deciding whether the mere granting of probation, without more, constitutes an implied promise of section 1203.4 relief. Nor was it tasked with deciding whether a subsequent limitation on section 1203.4 relief could be retroactively applied.

*Johnson* was cited in *Arata*, *supra*, 151 Cal.App.4th at page 787, the primary case on which defendant relies. In *Arata*, the appellate court, citing *Santobello*, concluded that, since the "defendant's plea rested in a significant degree on the promise

12

of eventual section 1203.4 relief, such promise must be fulfilled." (*Arata*, at p. 788.) *Arata* quoted *Santobello* for the "settled" law that a *prosecutor* must fulfill a promise that significantly induced the defendant's plea. (*Arata*, at p. 786.) *Arata* also stated "'that violation of the [plea] bargain by an *officer of the state* raises a constitutional right to some remedy.'" (*Id.* at pp. 786-787, italics added.) But, the *Arata* opinion does not reveal any evidence in the record there that the prosecutor promised the defendant eventual section 1203.4 relief. Nonetheless, *Arata* concluded section 1203.4 relief was an implied term of the defendant's plea bargain because such "relief is part of the bargain made with a probationer." (*Arata*, at p. 787.) For this proposition, *Arata* cited the *Johnson* dictum. (*Arata*, at p. 787.)

*Arata* was discussed in *Doe*, *supra*, 57 Cal.4th 64, where our Supreme Court distinguished *Arata* and then declined to address the soundness of *Arata's* holding: "We are not called upon here to review the merits of the [*Arata*] court's reasoning, as the situation here is not the same. Unlike the statute at issue in *Arata*, section 1203.4, section 290 [imposing registration requirements] has at all relevant times treated probationers and nonprobationers alike. It therefore could not have provided Doe an inducement to plead nolo contendere as a means of obtaining a benefit available only to persons receiving probation." (*Doe*, at p. 64.)

*Doe* also stated that *Arata* "did not find that as a general rule any law in effect at the time of a plea agreement becomes a term of the agreement." (*Doe*, *supra*, 57 Cal.4th at p. 73.) *Doe* further stated: "The [*Arata*] court distinguished *Acuna*, finding that unlike the situation there, the circumstances attending *Arata's* plea established that the promise of expungement was a part of the parties' understanding and had provided a significant inducement for the plea." (*Ibid.*) Significantly, *Doe* cited and discussed *Acuna* with apparent approval. (*Doe*, at p. 72.)

As noted in our discussion of the contract clause challenge, *Doe* held plea bargains *do* incorporate the State's reserve power to amend the law, but explained that

13

"despite the general rule, the facts and circumstances of a particular plea agreement might give rise to an implicit promise that the defendant will be unaffected by a change in the law." (*Doe*, *supra*, 57 Cal.4th at p. 71.)  "[W]hether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Ibid*.)  Here, after hearing a paucity of evidence, the court correctly determined there were no representations or other circumstances that gave rise to an implied promise, and properly denied section 1203.4 relief.

DISPOSITION

The postjudgment order is affirmed.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.


14