Filed 5/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>SAMMUEL PAUL GALINDO,<br><br>  Defendant and Appellant. | A154509<br><br>(Mendocino County<br>Super. Ct. Nos. SCUK-CRPA-17-92745, SCUK-CRCR-17-92746) |

Defendant Sammuel Paul Galindo pled no contest to mayhem and admitted, among other things, two prior serious felony conviction allegations pursuant to a plea bargain. He now appeals from the trial court's imposition of a 19-year prison sentence pursuant to the negotiated plea. Defendant's sole contention on appeal is that his case must be remanded for resentencing under Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), which allows trial courts to decide whether to strike or dismiss prior serious felony convictions, a discretionary authority they lacked at the time defendant was sentenced. The Attorney General contends defendant's appeal must be dismissed because he did not obtain a certificate of probable cause.

Recently, a split of authority has emerged among our Courts of Appeal as to whether a defendant sentenced pursuant to a stipulated sentence prior to the passage of Senate Bill 1393 must obtain a certificate of probable cause before seeking a remand for resentencing under the new law. (See *People v. Kelly* (2019) 32 Cal.App.5th 1013 (*Kelly*) [dismissing appeal due to lack of certificate of probable cause]; *People v. Stamps* (2019) 34 Cal.App.5th 117 (*Stamps*) [remanding for resentencing under Sen. Bill No. 1393].) A similar split has arisen with respect to Senate Bill No. 620 (2017–2018 Reg. Sess.) concerning firearm enhancements, which like Senate Bill 1393, grants trial courts

discretion they previously lacked to strike or dismiss the enhancements. (See *People v. Fox* (2019) ___ Cal.App.5th ___ [2019 Cal.App. Lexis 409] (*Fox*) [dismissing appeal due to lack of certificate of probable cause]; *People v. Hurlic* (2018) 25 Cal.App.5th 50 (*Hurlic*) [remanding for resentencing under Sen. Bill No. 620]; *People v. Baldivia* (2018) 28 Cal.App.5th 1071 (*Baldivia*) [same].) We find persuasive the analysis of a different panel of this Division in *Fox,* and for similar reasons conclude defendant's appeal is barred by his failure to obtain a certificate of probable cause. Accordingly, we dismiss the appeal.

## I. BACKGROUND

On December 28, 2017, the Mendocino County District Attorney filed a complaint charging defendant with one count of mayhem (Pen. Code,[1] § 203; count one), and one count of criminal threats (§ 422; count two). The complaint alleged two prior strikes (§§ 667, 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and three prior prison term commitments (§ 667.5, subd. (b)). The same day, the Division of Adult Parole Operations filed a petition to revoke defendant's parole.

Defendant pled no contest to mayhem, one strike, two prior serious felony convictions, and admitted one prior prison term commitment, pursuant to a negotiated plea deal promising a 19-year state prison term.[2] The trial court also found defendant in violation of parole pursuant to his plea. The trial court imposed the 19-year sentence on May 15, 2018. Defendant did not waive his right to appeal.

Defendant timely appealed from both the parole revocation and felony cases. On both notices of appeal, defendant checked the boxes indicating the appeals challenged the validity of the plea *and* were based on the sentence or other matters occurring after the plea that do not affect its validity. The trial court denied a certificate of probable cause in both cases.

---

[1] All further statutory references are to the Penal Code.

[2] Defendant was subject to a 37-year maximum term based on the charges.

## II. DISCUSSION

### A. *Application of Senate Bill No. 1393*

On September 30, 2018, the Governor signed Senate Bill 1393, which amends sections 667, subdivision (a) and 1385, subdivision (b) to give trial courts discretion to strike or dismiss prior felony conviction enhancement allegations. (§§ 667, subd. (a), 1385, subd. (b), as amended by Stats. 2018, ch. 1013, §§ 1, 2.) Defendant contends because the law went into effect on January 1, 2019, before the judgment in his case was final, he is entitled to a remand for a new sentencing hearing at which the trial court may decide whether to exercise its discretion to strike or dismiss the enhancements.

The Attorney General appropriately concedes that Senate Bill 1393 applies retroactively to defendant's case. Absent evidence to the contrary, when the Legislature amends a statute to either reduce the punishment for a crime or allow the trial court to exercise its " 'discretion to impose either the same penalty as under the former law or a lesser penalty,' " we assume the Legislature intends the amendment to apply to all judgments not final as of the statute's effective date. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307–308 & fn. 5.) Because the judgment is not yet final, Senate Bill 1393 applies retroactively in this case. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973; *Kelly*, *supra*, 32 Cal.App.5th at pp. 1015–1016.)

### B. *Certificate of Probable Cause*

Though we recognize Senate Bill 1393 is retroactive in effect, we must separately consider whether it mandates a remand for resentencing here as defendant argues, or whether, as the Attorney General asserts, his appeal must be dismissed because he failed to obtain a certificate of probable cause from the trial court.

Generally, a defendant may not appeal following a plea of guilty or no contest unless he or she first obtains a certificate of probable cause from the trial court. (§ 1237.5, subd. (b); *People v. Cuevas* (2008) 44 Cal.4th 374, 379; *People v. Espinoza* (2018) 22 Cal.App.5th 794, 798–799.) " 'The purpose and effect of section 1237.5 . . . are . . . to create a mechanism for trial court determination of whether an appeal raises . . . any nonfrivolous issue going to the legality of the proceedings. . . . Section 1237.5 was

intended to remedy the unnecessary expenditure of judicial resources by preventing the prosecution of frivolous appeals challenging convictions on a plea of guilty.' " (*People v. Johnson* (2009) 47 Cal.4th 668, 676 (*Johnson*).)

Despite the breadth of section 1237.5 and the Supreme Court's directive that it "should be applied in a strict manner" (*People v. Mendez* (1999) 19 Cal.4th 1084, 1098 (*Mendez*)), our courts have long recognized that a certificate of probable cause is not necessary to appeal rulings involving search and seizure issues or where a defendant is challenging not the validity of his or her plea, but errors at subsequent proceedings concerning the degree of the crime and penalty to be imposed. (*Johnson, supra,* 47 Cal.4th at pp. 676–677; see Cal. Rules of Court, rule 8.304(b)(4).) " 'In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*People v. Buttram* (2003) 30 Cal.4th 773, 781–782.)

Where the parties have agreed upon a stipulated sentence in the plea agreement, as here, courts have enforced the certificate requirement on appeal. (*People v. Panizzon* (1996) 13 Cal.4th 68, 73 (*Panizzon*); *Fox*, *supra*, ___ Cal.App.5th at p. __ [2019 Cal.App. Lexis 409 at p. *1].) "Even when a defendant purports to challenge only the sentence imposed, a certificate of probable cause is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement. [Citations.] . . . [I]n such cases . . . , as a consequence of the plea agreement, the validity of an agreed-upon aspect of the sentence is not in contention at the sentencing hearing. Such an agreed-upon aspect of the sentence cannot be challenged without undermining the plea agreement itself. Consequently, an attack upon an integral part of the plea agreement 'is, in substance, a challenge to the validity of the plea . . . .' " (*Johnson, supra,* 47 Cal.4th at pp. 678–679, quoting *Panizzon*, at p. 73.)

4

By contrast, a plea in which the parties agree to a *maximum* sentence does not require a certificate of probable cause unless the defendant challenges the legal validity of the maximum sentence itself. (*People v. Buttram, supra,* 30 Cal.4th at pp. 790–791; *Hurlic, supra,* 25 Cal.App.5th at pp. 55–56.) This is because a plea bargain where the parties agree to any sentence at or below a maximum necessarily contemplates that the trial court will choose from among a range of possible punishments. (*Buttram*, at pp. 790–791.) A challenge to such a sentence attacks the discretionary choices of the trial court in sentencing after the plea, and not (as here) the specific sentence agreed to by defendant and the prosecution as an integral part of the plea agreement. (See *id.* at p. 777 ["Unless it specifies otherwise, a plea agreement providing for a maximum sentence inherently reserves the parties' right to a sentencing proceeding in which (1) . . . they may litigate the appropriate individualized sentence choice within the constraints of the bargain and the court's lawful discretion, and (2) appellate challenges otherwise available against the court's exercise of that discretion are retained."].) As such, it does not require a certificate of probable cause. (*Ibid.*)

Though these authorities suggest a certificate of probable cause would be required in this case because the 19-year stipulated sentence was an integral part of the parties' plea bargain, defendant relies on two recent cases, *Hurlic, supra,* 25 Cal.App.5th 50 and *Baldivia*, *supra*, 28 Cal.App.5th 1071, to argue we must instead remand for the trial court to exercise its discretion whether to strike or dismiss his prior serious conviction enhancements. Both *Hurlic* and *Baldivia* concerned Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620), which amended sections 12022.5 and 12022.53 to grant trial courts discretion to strike or dismiss firearm enhancements. Though those cases concerned a different law, the same legal principles apply because like Senate Bill 1393, Senate Bill No. 620 grants trial courts sentencing discretion they did not have previously.

In addition, after this case was fully briefed, two new cases addressed the certificate of probable cause requirement as it pertains to appeals based on Senate Bill 1393. In *Kelly*, Division Six of the Second District Court of Appeal distinguished *Hurlic* and concluded the defendant's appeal from his stipulated sentence based on Senate

Bill 1393 must be dismissed because he failed to obtain a certificate of probable cause from the trial court.  (*Kelly*, *supra*, 32 Cal.App.5th at pp. 1016–1019.)  A month later, the *Stamps* decision from Division Four of this court disagreed with *Kelly*, and following *Hurlic* and *Baldivia,* remanded for the trial court to exercise its discretion to strike or dismiss prior serious felony enhancements.  (*Stamps*, *supra*, 34 Cal.App.5th at pp. 124–125.)

Having considered the parties' arguments and these recent authorities, we decline defendant's invitation to follow *Hurlic* and *Baldivia* (and presumably *Stamps*) because we disagree with the fundamental premise of those cases that the certificate of probable cause requirement conflicts with retroactive application of the new criminal sentencing laws.  (See *Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *16] [disagreeing with *Hurlic* court that conflict exists requiring determination of which authority " 'prevails' "].)  For reasons we will explain, we find more persuasive the analysis in *Fox,* a case from a different panel of this Division, also concerning the application of Senate Bill 620 to a plea bargain incorporating a stipulated sentence.

In *Hurlic,* the defendant pled no contest and accepted an offer from the prosecution for a 25-year prison sentence that included a 20-year firearm enhancement.  (*Hurlic, supra,* 25 Cal.App.5th at pp. 53–54.)  A few weeks after he was sentenced to the 25-year term, the Governor signed Senate Bill 620, granting trial courts discretion to strike firearm enhancements.  (*Hurlic*, at p. 54.)  On his notice of appeal, Hurlic did not check the box indicating his appeal challenged the validity of his plea, but he wrote on his notice of appeal that he sought to avail himself of " 'the new Senate Bill 620.' "  Hurlic did not obtain a certificate of probable cause from the trial court.[3]  (*Hurlic*, at p. 54.)

---

[3] While we disagree with the reasoning of the *Hurlic* case*,* we also disagree with the Attorney General that *Hurlic* is distinguishable from this case because here defendant checked a box on his notice of appeal stating he sought to challenge the validity of the plea or admission.  Although defendant indicated he sought to challenge the validity of his plea, he did not reference Senate Bill 1393 as the basis for his appeal, so we cannot infer the trial court ruled on that issue.  Furthermore, as stated in *Fox*, even if we could

The *Hurlic* court considered whether Hurlic was required to obtain a certificate of probable cause, noting that "question . . . lies at the intersection of two lines of authority." (*Hurlic*, *supra*, 25 Cal.App.5th at p. 55.)  The first line of authority, interpreting section 1237.5, "draws a line between pleas in which the parties agree that the court will impose a specific, agreed-upon sentence, and pleas in which the parties agree that the court may impose any sentence at or below an agreed-upon maximum," requiring a certificate of probable cause for the former but not the latter.  (*Hurlic*, at p. 55.)  Because the parties in *Hurlic* "agreed to a specific, 25-year prison sentence, this line of authority suggests that appellate review is permissible only if defendant first obtains a certificate of probable cause."  (*Id.* at p. 56.)  However, the second line of authority, providing for the retroactive applicability of criminal sentencing statutes that mitigate or lessen punishment (or provide the trial court discretion to do so), suggested Hurlic was entitled to have the trial court exercise its discretion whether to strike his firearm enhancements under Senate Bill 620.  (*Hurlic*, at p. 56.)

The court concluded the line of authority regarding retroactivity "trumps" the line of authority regarding the application of the probable cause certificate requirement for three reasons.  (*Hurlic, supra,* 25 Cal.App.5th at p. 57.)  First, " 'the general rule in California is that the plea agreement will be " 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.' " ' "  (*Ibid.*)  Because Hurlic's plea agreement did not contain a term incorporating only the law in existence at the time of its execution, it necessarily incorporated the subsequent enactment of Senate Bill 620.  (*Hurlic*, at p. 57.)  Second, the *Hurlic* court concluded that elimination of the certificate of probable cause requirement in these circumstances better

construe the trial court's denial of his request for a certificate of probable cause as encompassing a challenge based on Senate Bill 1393, we could not hold such a ruling against him "if a certificate was not required in the first place, as *Hurlic* and *Baldivia* suggest." (*Fox, supra*, ___ Cal.App.5th at p. ___] [2019 Cal.App. Lexis 409 at pp. *15–*16].)

7

implements the intent of the certificate requirement by incentivizing plea agreements and allowing appeals of nonfrivolous issues. (*Id.* at pp. 57–58.) Third, the court relied on the rule of statutory construction favoring the precedence of newly enacted and more specific laws when two statutes conflict, noting Senate Bill 620 must prevail because it is both more recent and more specific than section 1237.5. (*Hurlic*, at p. 58.)

In *Baldivia*, *supra,* 28 Cal.App.5th 1071, the defendant entered a plea of no contest to four criminal counts and admitted firearm and gang enhancement allegations. The appellate court concluded Baldivia was not required to obtain a certificate of probable cause and was entitled to a remand and possible resentencing hearing at which the court could exercise its discretion whether to strike the firearm enchantments. (*Id.* at pp. 1075, 1079.) *Baldivia* found dispositive *Hurlic*'s first rationale for favoring the retroactivity rule over the certificate of probable cause requirement. (*Baldivia*, at p. 1077.) Applying the general rule that plea agreements incorporate the reserve power of the state to amend and enact new laws, the court concluded that Senate Bill 620 applied retroactively to the defendant's judgment. The court reasoned: "If the electorate or the Legislature expressly or implicitly contemplated that a change in the law related to the consequences of criminal offenses would apply retroactively to all nonfinal cases, those changes logically must apply to preexisting plea agreements, since most criminal cases are resolved by plea agreements. It follows that defendant's appellate contentions were not an attack on the validity of his plea and did not require a certificate of probable cause." (*Baldivia*, at p. 1079.)

*Fox* disagreed with both *Hurlic* and *Baldivia*, holding a defendant's challenge to his conviction based on a guilty plea that included a stipulated sentence was barred because he failed to obtain a certificate of probable cause from the trial court. Acknowledging that Senate Bill 620 applies retroactively to all judgments not final when the law went into effect, the *Fox* court determined the new law would allow defendants that did not agree to serve a specific term for a firearm enhancement to seek resentencing and would allow those who did agree to a specific term to seek to withdraw from their pleas. (*Fox, supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at pp. *1–*2].)

8

"But we perceive no legislative intent to authorize trial courts to reduce agreed-upon sentences while otherwise permitting defendants to retain the benefits of their plea agreements." (*Id.* at p. *2.)

The *Fox* court's analysis began by disagreeing with "*Hurlic*'s initial premise that a conflict exists between the line of authority involving certificates of probable cause and the line of authority recognizing Senate Bill No. 620's retroactive effect, requiring a determination of which authority 'prevails.' [Citation.] Just because Senate Bill No. 620 applies to Fox's nonfinal judgment after a plea does not mean that Fox 'is entitled to have the trial court exercise its discretion' under the new law without regard to other legal requirements." (*Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *16].) "[T]he real issue is whether seeking a remand for a trial court to exercise its discretion under Senate Bill No. 620 is a challenge to the validity of the plea." (*Id.* at p. *17.)

*Fox* criticized the *Hurlic* court's application of the general rule that plea agreements incorporate subsequent changes in the law, in part because the rule "pertains only to changes that the Legislature or electorate ' "intended to apply to" ' the parties to plea agreements."[4] (*Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *19].) Citing language in Senate Bill 620 that provides the new authority granted to trial courts applies only " 'at the time of sentencing,' including 'any resentencing that

---

[4] The *Fox* court also found the general rule inapplicable because Senate Bill 620 was already " 'part of the legal landscape' " before Fox entered his plea and his counsel's comments at the sentencing hearing appeared to concede he would not have the benefit of the new law. (*Fox, supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *19].) Here, by contrast, defendant entered his plea and was sentenced well before Senate Bill 1393 passed the Legislature or became law. While this effectively may have precluded him from seeking a certificate of probable cause based on Senate Bill 1393, nothing prevented him from filing a petition for writ of habeas corpus on that basis. We reiterate that our Supreme Court has directed us to apply the certificate of probable cause requirement strictly, meaning "the defendant may not obtain review of certificate issues unless he has complied with section 1237.5 . . . fully, and, specifically, in a timely fashion—that is to say, unless he has done what they require, how they require, and when they require." (*Mendez, supra,* 19 Cal.4th at p. 1099.)

may occur pursuant to any other law,' " *Fox* concluded Senate Bill 620 did not reflect legislative intent that the new law apply to defendants convicted by plea, nor that the Legislature intended "to dispose of existing limits on a trial court's discretion when sentencing a defendant convicted by plea." (*Fox*, at pp. *23–*24.)

*Fox* further explained: " ' "The process of plea bargaining . . . contemplates an agreement negotiated by the People and the defendant and approved by the [trial] court." ' [Citation.] Before sentencing a defendant convicted by a plea, a trial court has the authority to withdraw its approval of the plea agreement. [Citations.] But once the court ' "has accepted a plea bargain[, it] is bound to impose a sentence within the limits of that bargain. . . . Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly.' " [Citation.] In other words, a court is prohibited 'from unilaterally modifying the terms of the bargain without affording—or after it has become impossible to afford—an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off.' [Citation.] Nothing in Senate Bill No. 620 suggests that, upon becoming effective, it empowers a trial court to disregard the express terms of a plea agreement by imposing a sentence that does not reflect an agreed-upon term for a firearm enhancement. Thus, we cannot agree with Fox that the new law entitles him to 'whittle down' his sentence by two-thirds, to five years, while otherwise retaining the benefits of a bargain that resulted in the dismissal of numerous other charges and allowed him to avoid a potential life sentence." (*Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at pp. *24–*25].)

We agree with this court's analysis in *Fox*. When the parties agree to a specific sentence, a defendant seeking to reduce that sentence is necessarily challenging the validity of the plea itself. (*Panizzon, supra,* 13 Cal.4th at pp. 73, 79; *Johnson, supra,* 47 Cal.4th at pp. 678–679.) Thus, consistent with our obligation to strictly apply the certificate of probable cause requirement as mandated by our Supreme Court (*Mendez, supra,* 19 Cal.4th at p. 1098), we conclude that where the prosecution and defendant have negotiated a specific sentence, a certificate of probable cause is a necessary predicate to

10

an appeal seeking a remand for resentencing under Senate Bill 1393. (*Fox, supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *2]; *Kelly, supra,* 32 Cal.App.5th at pp. 1017–1018.)

Further, the *general* legal principle that changes in the law are deemed incorporated into a plea bargain does not apply *here*, because the change in the law created by Senate Bill 1393 (allowing the court to exercise its sentencing discretion) does not affect defendant's plea, which stated a specific, agreed-upon sentence that had already been accepted and imposed by the trial court, not a sentence which granted the trial court discretion to select the sentence. Had the parties agreed to a maximum sentence instead, the certificate of probable cause requirement would not apply, and defendant would be free to argue on appeal the case should be remanded for the court to exercise its discretion as agreed by the parties at the time they entered the plea deal. (See, e.g., *Buttram, supra,* 30 Cal.4th at p. 786 ["when the claim on appeal is merely that the trial court abused the discretion the parties intended it to exercise, there is, in substance, no attack on a sentence that was 'part of [the] plea bargain.' [Citation.] Instead, the appellate challenge is one contemplated, and reserved, by the agreement itself."].)

Like *Fox,* we find *People v. Cunningham* (1996) 49 Cal.App.4th 1044 persuasive and analogous on this point. In *Cunningham*, the defendant sought remand to allow the trial court to exercise its discretion whether to strike his prior felony convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Though the *Romero* court's holding clarifying trial courts have such authority was retroactive, *Cunningham* denied relief because the defendant had entered a negotiated plea deal with a specified sentence. (*Cunningham,* at p. 1047.) As the court explained, " ' "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] . . . Once the court has accepted the terms of the negotiated plea, "[i]t lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless of course, the parties agree." ' " (*Ibid.*; see also *Kelly, supra,*

11

32 Cal.App.5th at p. 1017 [even if court were to remand for resentencing under Sen. Bill 1393, court would be bound by parties' stipulated sentence].)

In addition, as this court explained in *Fox,* the requirement that later laws are incorporated into the plea bargain applies only to changes that were *intended* to apply to defendant. (*Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *19].) There is nothing in the language or legislative history of Senate Bill 1393 that suggests the Legislature intended to grant trial courts discretion to reduce stipulated sentences to which the prosecution and defense have already agreed in exchange for other promises. Neither the words of the statute itself nor the legislative history reference plea bargaining, nor do they express an intent to overrule existing law that once the parties agree to a specific sentence, the trial court is without power to change it unilaterally. (See *People v. Segura* (2008) 44 Cal.4th 921, 931–932; *People v. Giordano* (2007) 42 Cal.4th 644, 659 ["The Legislature is presumed to be aware of ' "judicial decisions already in existence, and to have enacted or amended a statute in light thereof." ' "].)

Nor are we persuaded by the *Hurlic* court's reliance on *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*) and *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*), two cases which are distinguishable because they did not discuss or consider the certificate of probable cause requirement. In *Harris*, our Supreme Court considered whether the passage of Proposition 47 after the defendant entered a plea agreement would allow the prosecution to withdraw from the agreement if the defendant petitioned for a recall and resentencing. The court concluded it would not, because "entering into a plea agreement does not insulate the parties 'from changes in the law that *the Legislature has intended to apply to them.*' " (*Harris*, at p. 991, italics added by *Harris*.) Proposition 47 expressly provides that it "governs someone 'serving a sentence for a conviction, *whether by trial or plea,*' of one of the felonies that Proposition 47 reduced to a misdemeanor. . . . By expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, at p. 991, italics added by *Harris*.) Unlike Proposition 47, the amendment in Senate Bill 1393 does not expressly mention convictions by plea but grants discretion to the trial court to strike or dismiss such enhancements. (Legis.

12

Counsel's Dig., Sen. Bill No. 1393 (2017–2018 Reg. Sess.) Stats. 2018, ch. 1013, §§ 1, 2 [Sen. Bill 1393 deletes restriction prohibiting judge from striking prior serious felony conviction when imposing a sentence for serious felony].) Nor does it, like Proposition 47, create a procedural mechanism allowing defendants to reduce their sentences. (*Harris*, at pp. 991–992.) Thus, unlike Proposition 47, Senate Bill 1393 does not reflect legislative intent to alter existing sentences based on a negotiated plea deal involving a stipulated sentence.

*Doe* is equally unavailing. There, our Supreme Court answered a question on certification from the Ninth Circuit Court of Appeals regarding the impact on a plea bargain of amendments to the Sex Offender Registration Act (§ 290 et seq.). (*Doe, supra,* 57 Cal.4th at p. 65.) The court held "that the general rule in California is that the plea agreement will be ' " deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. . . ." ' [Citation.] That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law *that the Legislature has intended to apply to them.*" (*Id.* at p. 66, italics added.) In *Doe*, the express language of the statutory amendment stated it applied to " 'every person' " required to register as a sex offender, regardless of when his or her crimes were committed or when the duty to register arose. (*Id.* at pp. 66–67.) With respect to Senate Bill 1393, by contrast, the new law grants discretion to the trial court in imposing sentences, but there is no language or evidence to suggest the Legislature intended trial courts to exercise discretion they do not have for defendants sentenced pursuant to stipulated sentences.[5] (See *Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *24].) Nor is there any evidence of legislative intent in Senate Bill 1393 to eliminate the certificate of probable cause requirement for challenges to such sentences, a requirement that was not discussed in *Doe,* a civil case.

---

[5] *Doe* is also distinguishable because it did not involve a defendant's challenge to a stipulated sentence that was an integral element of a plea bargain.

13

We also reject the two other rationales offered by the *Hurlic* court for finding the retroactivity rule "trumps" the certificate of probable cause requirement. As its second reason, the *Hurlic* court concluded allowing the trial court to exercise its sentencing discretion would encourage defendants to enter plea bargains (or at least not dissuade them from doing so) because otherwise a defendant would have to go through the "additional step of seeking and obtaining a certificate of probable cause to avail himself or herself of the advantage of ameliorative laws like Senate Bill No. 620 (2017–2018 Reg. Sess.) that are otherwise indisputably applicable to him or her . . . ." (*Hurlic, supra,* 25 Cal.App.5th at p. 58.) We seriously question whether defendants (or their counsel) would be dissuaded from negotiating and entering plea bargains because they need to obtain a certificate of probable cause to pursue an appeal. It seems much more likely that the incentive for both parties to agree to a bargain for a specified number of years is reduced by a rule allowing the trial court to unilaterally modify that bargain at some point in the future without the parties' consent.

The third rationale relied on by the *Hurlic* court is also unsound. It cited the rule of statutory construction which provides that where two statutes conflict, courts give precedence to the later-enacted statute and the more specific statute, and if those two rules of precedence conflict, the more specific statute trumps. (*Hurlic, supra,* 25 Cal.App.5th at p. 58.) As we discussed above, however, section 1237.5 and Senate Bill 1393 do not conflict, and thus, the rule of statutory construction does not apply. There is no evidence the Legislature, in passing Senate Bill 1393, intended to alter the rule that once a trial court has accepted a negotiated deal for a specific sentence it lacks jurisdiction to alter that sentence unless the parties agree. As the *Fox* court observed with respect to Senate Bill 620, "Nothing . . . suggest[s] that, upon becoming effective, it empowers a trial court to disregard the express terms of a plea agreement by imposing a sentence that does not reflect an agreed-upon term . . . . Thus, we cannot agree with [defendant] that the new law entitles him to 'whittle down' his sentence . . . , while otherwise retaining the benefits of a bargain that resulted in the dismissal of numerous

14

other charges and allowed him to avoid a potential life sentence." (*Fox*, *supra*, ___ Cal.App.5th at p. ___ [2019 Cal.App. Lexis 409 at p. *25].)

In sum, we agree with the reasoning in *Fox* and disagree with *Hurlic* and *Baldivia*. We hold that where, as here, the parties have agreed to a specific sentence as part of a negotiated plea, a defendant must obtain a certificate of probable cause to pursue an appeal challenging his or her sentence under Senate Bill 1393 because the appeal is, in substance, an attack on the validity of the plea.

## III.  DISPOSITION

The appeal is dismissed.

_____
Margulies, J.

We concur:


_____
Humes, P. J.


_____
Banke, J.


A154509
*People v. Galindo*

16

Trial Court: Mendocino County Superior Court

Trial Judge: Hon. John Behnke

Counsel:

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Laurence K. Sullivan and René A. Chacón, Deputy Attorneys General for Plaintiff and Respondent.