Filed 4/15/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELVIN DWAYNE MATTHEWS, JR.,<br><br>    Defendant and Appellant. | No. A157723<br><br>(Humboldt County Super. Ct. Nos. CR1702609, CR1801307, CR1803214) |

Defendant Melvin Dwayne Matthews appeals from judgments issued by the Humboldt County Superior Court in three cases brought by the Humboldt County District Attorney in 2017 and/or 2018.  Matthews was sentenced to a stipulated total of 10 years in state prison in a single negotiated disposition of all three cases.  He contends that we should strike the four one-year terms imposed under the resulting plea agreement based on a revision to Penal Code section 667.5, subdivision (b) that eliminates such terms for all but certain prior sexual offenses, and that the other stipulated sentences imposed should remain intact, thereby reducing his total term in prison to six years.  The People agree that these one-year enhancements should be stricken but argue we should remand to the trial court for resentencing so that the court may reconfigure Matthews's overall sentence to come as close to a 10-year term as possible.

We first determine that we have jurisdiction to consider these appeals even though Matthews did not seek a certificate of probable cause for any of them.  We agree that the four-one-year enhancement terms must be stricken.

1

We further conclude that, based on the express terms of the plea agreement,[1] the court should leave the remainder of the sentences imposed intact.

## BACKGROUND

The district attorney charged Matthews in the first case, number CR1702609 (Case 1), with felony grand theft (Pen. Code, § 487, subd. (a)),[2] and alleged he had suffered a prior strike conviction (§§ 667, subds. (b)-(i)) and five prior prison terms for felony convictions that subjected him to sentence enhancement provisions then called for under section 667.5, subdivision (b); charged Matthews in the second case, number CR1801307 (Case 2), with making criminal threats (§ 422) and misdemeanor resisting an officer (§ 148, subd. (a)(1)), and alleged additional enhancement allegations; and charged Matthews in the third case, number CR1803214 (Case 3), with the unlawful taking of a motor vehicle (Veh. Code, § 10851, subd. (a)), receiving stolen property—motor vehicle (§ 496d, subd. (a)) and misdemeanor resisting arrest (§ 148, subd. (a)(1)), and also alleged enhancement allegations.

In May 2019, Matthews and the prosecution entered into a plea agreement in which they stipulated to specific sentences in all three cases. Matthews filled out a change of plea form for each case in which he wrote the sentences agreed to for that case, which form also was executed by his attorney, the prosecutor and the court. In each instance, he indicated there was no sentencing decision left to the court's discretion by *not* initialing the section on the form stating that his was an "open plea."

Specifically, Matthews indicated on his change of plea form for Case 1 that he would plead guilty to felony grand theft and admit the prior strike

---

[1] The terms of the agreement are reflected in, among other things, the three plea forms executed by Matthews for each of the three cases.

[2] Statutory references are to the Penal Code unless otherwise stated.

2

allegation, for which he would be sentenced to six years, consisting of a three-year upper term that would be doubled to six years because of the prior strike. Further, he would admit four of the five allegations that he had suffered prior prison terms, for which he would be sentenced to four one-year terms under section 667, subdivision (b). Thus, his total sentence in Case 1 would be 10 years. He also indicated that these sentences would run concurrently with the sentences in Cases 2 and 3.

As indicated on his change of plea form for Case 2, Matthews would plead guilty to resisting arrest (§ 69), for which he would be sentenced to a three-year term to run concurrently with the other cases. As indicated in his change of plea form for Case 3, Matthews would plead guilty to unlawfully taking a motor vehicle, for which he also would be sentenced to a three-year concurrent term.

The trial court found Matthews guilty of the charges to which he pleaded, found the allegations admitted true, and sentenced Matthews to the sentences the court stated were "stipulated" by the parties. Matthews timely appealed from the judgment in each case. He did not request a certificate of probable cause in any of the cases. We asked, and the parties filed, supplemental briefing, including regarding whether we have jurisdiction to consider Matthews's appeals despite the absence of any certificates of probable cause.

## DISCUSSION

Under the version of section 667.5 that governed when Matthews was sentenced, section 667.5, subdivision (b) required a one-year enhancement for each prior separate prison term served for "any felony," with an exception not applicable here. (Stats. 2018, ch. 423, § 65.) In 2019, Senate Bill No. 136 was

passed.[3] It changed this enhancement to apply only to a prior prison term served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§ 667.5, subd. (b).)[4] In other words, Senate Bill No. 136 limited the imposition of a sentence enhancement under section 667.5, subdivision (b) to prior prison terms resulting from convictions for sexually violent offenses. (Legis. Counsel's Dig., Stats. 2019, ch. 590.) As non-urgency legislation, it went into effect on January 1, 2020. (Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865 [" ' "Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner" ' "].)

## I.

### *We Have Jurisdiction to Consider Matthews's Appeal.*

Before we address the merits of Matthews's appeals, we address whether we have jurisdiction to consider them even though he appeals from judgments resulting from a negotiated disposition without obtaining any certificates of probable cause from the trial court.

---

[3] Prior to January 1, 2020, section 667.5, subdivision (b) provided in relevant part, "[W]here the new offense is any felony for which a prison sentence . . . is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term . . . ." (Stats. 2018, ch. 423, § 65.)

[4] As of January 1, 2020, section 667.5, subdivision (b) provides in relevant part, "[W]here the new offense is any felony for which a prison sentence . . . is imposed . . . , in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision b) of Section 6600 of the Welfare and Institutions Code . . . ."

A certificate of probable cause is required where the claim raised on appeal "is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*People v. Panizzon* (1996) 13 Cal.4th 68, 76.) California Rules of Court, rule 8.304(b)(4)(B) creates an exception to this requirement when an appeal is based on "grounds that arose after entry of the plea and that do not affect the validity of the plea." (*People v. French* (2008) 43 Cal.4th 36, 43.)

Regarding the retroactive application of changes in the law, "the general rule in California is that a plea agreement is ' "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." ' " (*Doe v. Harris* (2013) 57 Cal.4th 64, 73 (*Doe*); *Harris v. Superior Court* (2016) 1 Cal.5th 984, 990-992 [prosecution cannot withdraw from plea agreement calling for specified term following retroactive application of new law reducing offense to a misdemeanor] (*Harris*).) Thus, "requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of [a] plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Doe*, at pp. 73-74.) The Legislature acknowledged the authority of *Doe* in section 1016.8, subdivision (a)(1), and went further, providing, "A provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy." (§ 1016.8, subd. (b).)

*People v. Hurlic* (2018) 25 Cal.App.5th 50 (*Hurlic*) is particularly instructive.  The *Hurlic* court reasoned that a general contract rule applied to plea agreements; that is, that future changes in law are incorporated into such agreements absent an express agreement to the contrary.  (*Id.* at p. 57; see also *People v. Shelton* (2006) 37 Cal.4th 759, 767 ["A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles"].)  The *Hurlic* court also concluded the underlying purposes of the certificate of probable cause requirement—to encourage and facilitate plea agreements, and to " 'weed out frivolous or vexatious appeals' "—were not served by requiring the defendant to obtain a certificate in cases where the defendant's entitlement to retroactive application of a new law was undisputed.  (*Hurlic*, at pp. 57-58; see also *People v. Baldivia* (2018) 28 Cal.App.5th 1071, 1079 [concluding, among other things, that the defendant's claim to procedural entitlements provided by Proposition 57 was not an attack on the validity of his plea and did not require a certificate of probable cause].)

Some recent appellate courts have required certificates of probable cause in order to consider whether changes in the law applied to cases resolved by negotiated disposition.  For example, in *People v. Fox* (2019) 34 Cal.App.5th 1124, 1135, review granted July 31, 2019, S256298, the appellate court held that a certificate of probable cause was required where a defendant entered a plea after the Legislature passed Senate Bill No. 620, and an attorney's argument at sentencing indicated the defendant would not benefit from the change in the law.  (See also *People v. Galindo* (2019) 35 Cal.App.5th 658, 670 (*Galindo*), review granted Aug. 28, 2019, S256568; *People v. Williams* (2019) 37 Cal.App.5th 602, 605, review granted Sept. 25, 2019, S257538 [both regarding Sen. Bill No. 1393]; contra, *People v. Stamps*

(2019) 34 Cal.App.5th 117, review granted June 12, 2019, S255843 [claim to Sen. Bill No. 1393 relief not a challenge to the validity of the plea].)

The reasoning and holdings of those cases do not apply here because the cases involved laws that changed a court's mandatory imposition of a sentence to a discretionary one. (*People v. Fox*, *supra*, 34 Cal.App.5th at p. 1127; *Galindo*, *supra*, 35 Cal.App.5th at p. 662; *People v. Williams*, *supra*, 37 Cal.App.5th at p. 604.) They held that under such a circumstance, a defendant's challenge of the previously mandatory sentence was a challenge to the underlying plea agreement itself and, therefore, required a certificate of probable cause. (E.g., *Galindo*, at p. 670.) Here, Senate Bill No.136 does not allow a court's discretionary modification of a sentence. Rather, it entirely eliminates application of the sentence enhancement called for in the previous version of section 667.5, subdivision (b) to most felony offenders, including Matthews. In other words, this change precludes imposition of the enhancement, and is consistent, therefore, with the changes considered in *Doe* and *Harris*. Under their holdings, therefore, Matthews was not required to obtain a certificate of probable cause to appeal the court's imposition of his sentence enhancements via a plea agreement.

## II.

### *The Enhancements Must Be Stricken.*

Regarding the merits of Matthews's appeal, we conclude the section 667.5, subdivision (b) enhancements must be stricken.

Absent evidence of a contrary legislative intent, when an act of the Legislature lessens or eliminates the prescribed punishment for a criminal offense or a sentencing enhancement, such a penalty reduction must be applied retroactively to all judgments not yet final on appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 745-748; accord, *People v. Nasalga* (1996) 12 Cal.4th

7

784, 792 (*Nasalga*) ["The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses"]; *People v. Brown* (2012) 54 Cal.4th 314, 323 [courts assume, absent evidence to the contrary, that the Legislature intended an "amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date"].) "[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (*Nasalga*, at p. 790, fn. 5.)

In *People v. Millan* (2018) 20 Cal.App.5th 450, the appellate court addressed a circumstance similar to the one here. It considered whether, under *In re Estrada*, a new law that "remove[d] a number of prior convictions from the list of prior convictions that qualify a defendant for the imposition" of an enhancement under the Health and Safety Code applied retroactively to non-final judgments. (*Millan*, at p. 454.) The court concluded the law applied retroactively because it was "undisputed that the amendment . . . lessens punishment for a person . . . whose prior convictions no longer qualify for the . . . enhancement. Rather than being subjected to a three-year enhancement for each prior conviction, such persons are no longer subject to *any* enhanced punishment pursuant to the amended statute." (*Id.* at pp. 455-456.)

Similarly, the Legislature's change to section 667.5, subdivision (b) is a reduction in punishment that applies retroactively to non-final judgments under the case law we have discussed. Furthermore, this change went into effect at the beginning of 2020, while this appeal was pending. Matthews's four one-year enhancement sentences were imposed for prior prison terms for offenses that were not sexual in nature. Therefore, as both Matthews and

8

the People assert, Senate Bill No. 136 applies to the enhancement part of Mathews' sentences, which must therefore be stricken—a conclusion that is consistent with other recent appellate decisions. (See *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772; *People v. Petri* (2020) 45 Cal.App.5th 82, 94; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682.)

## III.

### *The Trial Court Cannot Alter the Sentences Agreed to Under the Plea Agreement.*

Regarding the remedy, Matthews argues we should remand to the trial court with instructions to strike the four one-year enhancement terms imposed under the previous version of section 667.5, subdivision (b) and otherwise leave the remaining sentences imposed under the plea agreement intact. The People, on the other hand, argue we should remand with an order that the trial court strike the enhancement terms and exercise its discretion to reconsider Matthews's sentences entirely in order to impose a newly constituted term as close to 10 years as possible. They note that the court could decide to impose consecutive rather than concurrent terms for the sentences imposed for Case 2 or Case 3. The plea agreement here specifies the precise sentences to be imposed for each charge and enhancement, and we therefore conclude that the trial court lacks the power to alter those sentences except to eliminate enhancements affected by Senate Bill No. 136.

A plea agreement is a binding contract. "[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by

9

prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged . . . , or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information.  Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.  [Citations.]  But implicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929-930 (*Segura*).)

"Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles.  [Citations.]  Acceptance of the agreement binds the court and the parties to the agreement. [Citations.]  ' "When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.  [Citations.]" ' " (*Segura, supra,* 44 Cal.4th at pp. 930-931.)  "Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.  [Citation.]  "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound."  [Citation.]  Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly.' " (*Id.* at p. 931; accord, (*K.R. v. Superior Court* (2017) 3 Cal.5th 295, 303-304.)  "[I]n the context of a negotiated plea the trial court may approve or reject the parties' agreement, but the court may not attempt to secure such a plea by stepping into the role

10

of the prosecutor, *nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved*." (*Segura,* at pp. 931-932, italics added.)

Furthermore, " '[a] negotiated plea agreement . . . is interpreted according to general contract principles. . . . "If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)" ' " (*People v. Allison* (2019) 39 Cal.App.5th 688, 701.) "The terms of a plea bargain are unique to the case in which the bargain was reached . . . ." (*People v. Ellis* (2019) 43 Cal.App.5th 925, 944, review granted Feb. 26, 2020, S260261.) As we have already indicated, "as a general rule, . . . requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Doe*, *supra*, 57 Cal.4th at pp. 73-74; accord, *Harris*, *supra*, 1 Cal.5th at p. 991.) "If parties to a plea agreement want to insulate the agreement from future changes in the law they should specify that the consequences of the plea will remain fixed despite amendments to the relevant law." (*People v. Wright* (2019) 31 Cal.App.5th 749, 756.)

Here, the express provisions of the plea agreement, as evidenced by the forms filled out by Matthews and executed by the parties and the court for all three cases, plainly provide for stipulated sentences. Specifically, the forms reflect that Matthews was to receive, besides the prior prison term enhancements, a six-year term for felony grand theft with a prior strike conviction in Case 1 and concurrent three-year sentences in Cases 2 and 3.

11

Each of the plea forms indicates the plea was not an "open plea," and the court's sentencing minute orders indicate Matthews was sentenced to the "stipulated" terms. Under these circumstances, contract law binds the parties and the court to the stipulated sentences. (See *People v. Blount* (2009) 175 Cal.App.4th 992 [trial court could not change a sentence clearly and unequivocally stipulated to in a plea agreement even though a codefendant had received a lesser sentence]; *People v. Rodriguez* (1987) 191 Cal.App.3d 1566, 1569 [under Penal Code section 1192.5, defendant " ' "cannot be sentenced . . . to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea" ' "].) The cases cited by the People are distinguishable because they do not appear to have involved plea agreements with specific agreed-upon sentences. (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259; *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.)

In addressing a slightly different question, *Harris*, *supra*, 1 Cal.5th 984 noted a similar legislative intent regarding Proposition 47. Harris entered into a plea agreement under which he had pleaded guilty to grand theft and admitted an enhancement allegation in exchange for a fixed term and dismissal of a robbery charge and other enhancement allegations. (*Id*. at p. 987.) Subsequently, Harris sought to have his grand theft conviction resentenced as a misdemeanor under a new law, Proposition 47. (*Ibid*.) The California Supreme Court, concluding that Proposition 47 applied to Harris, considered whether its application entitled the prosecution to unilaterally withdraw from the plea agreement and reinstate the original charges. (*Id*. at pp. 989-993.) It concluded the People could *not* withdraw, both based on contract law and Proposition 47's purposes, as indicated by its terms and as expressed in the voter information guide. (*Ibid*.) Regarding the initiative's

purposes, the court reasoned, "One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative.  (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70; [citation].)  Accepting the People's position would be at odds with that purpose.  As Justice Mosk observed in dissent below, 'If a reduction of a sentence under Proposition 47 results in the reinstatement of the original charges and elimination of the plea agreement, the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated.' "  (*Id*. at 992.)

Here, similarly, the purposes of Senate Bill No. 136 would be frustrated if the trial court were allowed to unilaterally alter agreed-to terms of a plea agreement after striking enhancement sentences as required by Senate Bill No. 136.  The author of that bill noted that " 'evidence shows that longer and overly-punitive sentences are extremely expensive and increase the chances that someone will reoffend' "  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 136 (2019-2020 Reg. Sess.) Sept. 13, 2019, p. 3) and that the bill would, among other things, " 'save California tax payers tens of millions [of] dollars each year," and "keep families together, redirect funds to evidence-based rehabilitation and reintegration programs, and move California away from our failed mass incarceration policies.' "  (*Ibid*.)  These benefits would not be fully realized if the trial courts and the People could abandon a plea agreement whenever a defendant seeks retroactively to obtain elimination of an enhancement invalidated by Senate Bill No. 136.

We conclude the trial court cannot, in striking the enhancements invalidated by Senate Bill No. 136, reconsider other aspects of the sentences Matthews and the People specifically agreed to under the plea agreements.

13

## DISPOSITION

The trial court is ordered to strike Matthews's four one-year sentences imposed under section 667.5, subdivision (b) and leave the remainder of the sentences imposed under the plea agreements intact.  The trial court is instructed to issue an amended abstract of judgment and provide a copy to the California Department of Corrections and Rehabilitation.

_____
STEWART, J.

We concur.

_____
KLINE, P.J.

_____
MILLER, J.

*People v. Matthews* (A157723)

15

Trial Court:Humboldt County Superior Court

Trial Judge:        Hon. Kaleb V. Cockrum

Counsel:

Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Jeffrey M. Laurence, Assistant Attorneys General, René A. Chacón, Masha A. Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.