Filed 12/17/19 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B287272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA454306) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| DAMION WILSON, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on November 20, 2019 be modified as follows:

1.  On page 6, the last sentence and citations of the second paragraph are deleted and replaced with the following:

However, *Dent* noted that even if a request is denied for an improper reason, if the record establishes that the request was nonetheless properly denied on other grounds, it would uphold the trial court's ruling.  (*Dent*, at p. 218; see *People v. Scott*, *supra*, 91 Cal.App.4th at p. 1206 [sufficient reasons on record constituted implicit consideration of *Windham* factors].)

This modification does not change the judgment.
The petition for rehearing is denied.
CERTIFIED FOR PARTIAL PUBLICATION.

_____

DHANIDINA, J.       EDMON, P. J.       EGERTON, J.

Filed 11/20/19 (unmodified opinion)
**CERTIFIED FOR PARTIAL PUBLICATION\***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE, | B287272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA454306) |
| v. | |
| DAMION WILSON, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Affirmed.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

---

**\*** Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.

Damion Wilson pleaded no contest to forcible rape and admitted prior felony convictions after the trial court denied his *Faretta*[1] motion.  On appeal, he contends that the motion should have been granted and that he did not knowingly and intelligently waive his right to a jury trial on his priors.  We reject these contentions.  And, in the published portion of this opinion, we reject his contention that he is entitled to remand for resentencing under Senate Bill No. 1393.  Where, as here, the sentence resulted from a negotiated plea, a defendant is not entitled to remand under that law.

## BACKGROUND

Wilson and the victim had a brief relationship.  After it ended, he forcibly entered the victim's home and raped her.  An information therefore charged Wilson with kidnapping (Pen. Code,[2] § 207, subd. (a); count 1), forcible rape in the course of a burglary (§§ 261, subd. (a)(2), 667.61, subds. (a), (d)(4); count 2), first degree burglary, person present (§ 459; count 3), and assault to commit a felony during commission of a first degree burglary (§ 220, subd. (b); count 4).  On November 6, 2017, Wilson pleaded no contest to forcible rape and admitted he had a prior strike and a prior serious felony conviction (§ 667, subd. (a)(1)).  Pursuant to the negotiated plea, the trial court sentenced him to six years, doubled to 12 years based on the prior strike, plus five years for the prior serious felony, for a total of 17 years.

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

## DISCUSSION

### I.    *Faretta* request

On the eve of trial, Wilson asked to represent himself. The trial court denied the request, finding it equivocal. As we now explain, the request was properly denied, but for another reason, untimeliness.

A defendant in a criminal case has a Sixth Amendment right to represent himself or herself. (*People v. Marshall* (1997) 15 Cal.4th 1, 20.) To invoke this right, the defendant must unequivocally assert it within a reasonable time before trial (*People v. Windham* (1977) 19 Cal.3d 121, 127–128), and the request must be knowing and voluntary (*People v. Doolin* (2009) 45 Cal.4th 390, 453). A timely, unequivocal request for self-representation must be granted, no matter how unwise the request. (*Windham*, at p. 128.) Otherwise, untimely requests for self-representation are addressed to the trial court's sound discretion. (*Id.* at pp. 127–129.) Also, an equivocal request must be distinguished from a conditional one. A conditional request is one, for example, where the defendant asks that counsel be removed and, if not removed, that the defendant wants to represent himself. (*People v. Michaels* (2002) 28 Cal.4th 486, 524.) Such a request is not equivocal. (*Ibid.*) To evaluate whether a trial court erred by denying a *Faretta* request, we look at the defendant's words and conduct to determine whether the defendant really wanted to give up the right to counsel. (*Marshall*, at pp. 25–26.)

Here, Wilson's words and conduct were clear that if he did not get a different counsel, then he wanted to represent himself.

3

On the day set for trial, Wilson made a *Marsden*[3] motion, which was denied.[4]  He then asked to represent himself.  The trial court advised Wilson of the felony charges against him, that he faced three different strikes and two life counts, and that self-representation was a bad decision.  When the trial court asked Wilson if he really did not want help to understand the technical and sophisticated legal principles, Wilson said, "It's not what I wish but," "I wish I had counsel that I believe is going to fight on my behalf."  The trial court found the request to be equivocal:  "It has to be unequivocal.  It's clear to me you want counsel.  It's clear you need counsel.  And this is in response to a[n] adverse ruling in another motion, sir."

Wilson then asked if he could have cocounsel, and the trial court told him no, this was not a way to get a different lawyer.  Wilson replied, "What I'm saying—I don't need a lawyer to represent me.  A standby lawyer—I don't need somebody that's going—"  At that point, the trial court interrupted Wilson and asked why he needed a standby lawyer.  Wilson said, "just in case if I have a question."  When the trial court explained that this was not how a standby lawyer works, Wilson said he did not need counsel, then.  The trial court repeated that the request was

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

[4] Wilson had previously made *Faretta* and *Marsden* motions.  When he made his first *Faretta* request, the trial court asked Wilson if he really thought he could represent himself.  Wilson replied he could do a better job than his counsel, who was not cooperating with him.  After further discussion, Wilson said he would rather have another public defender.  The trial court therefore held a *Marsden* hearing and denied the *Marsden* motion.

4

equivocal, and that Wilson was trying to get another lawyer, recognizing he needed representation. Wilson repeated he didn't need another counsel. He said, "I'm not asking for another counsel. You said this is my decision. [¶] . . . [¶] . . . This is not—this is not what I want to do, but my counsel that's representing me left me no choice. I'm going in blind, not knowing what's going on, your Honor." This, the trial court responded, was exactly the equivocation that made it clear Wilson did not want to represent himself. The trial court therefore denied the *Faretta* request.

As this demonstrates, Wilson's dissatisfaction with his counsel prompted his *Faretta* request. But, a clearly stated *Faretta* request motivated by dissatisfaction with counsel is not equivocal. (*Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1529–1530.) In *People v. Weeks* (2008) 165 Cal.App.4th 882, for example, a public defender represented the defendant. The defendant then was permitted to go pro se. After several months, the defendant asked if his standby counsel could take over but was told that if he lost his pro per status the original public defender would be reappointed. The defendant made it clear that if he had to choose between remaining in propria persona or being represented by his original public defender, then he would choose the former. (*Id.* at p. 885.) Finding the defendant's position to be equivocal, the trial court revoked his status and reappointed the original public defender. *Weeks* held that denying the request was error. (*Id.* at p. 887.) Like the defendant in *Weeks*, Wilson clearly expressed he would rather represent himself than continue being represented by his counsel. Hence, his request was conditional.

And, had it been timely, it should have been granted. But it was not timely. That is, a motion to represent oneself must be made within a reasonable time before trial commences. (*People v. Windham, supra*, 19 Cal.3d at p. 128.) Thus, a *Faretta* motion made on the day of trial may be found to be untimely (*People v. Frierson* (1991) 53 Cal.3d 730, 740, 742), as may one made four days before trial is to begin (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205). An untimely *Faretta* request requires consideration of the quality of counsel's representation, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. (*Windham*, at p. 128.)

Although the trial court did not state it was also denying Wilson's *Faretta* motion on the ground of untimeliness, we can independently review the record to determine whether it would properly have been denied on this ground. (See *People v. Halvorsen* (2007) 42 Cal.4th 379, 433, fn. 15.) In *People v. Dent* (2003) 30 Cal.4th 213, 218, for example, the trial court denied a *Faretta* motion for an improper reason. Nonetheless, because the record established the request was properly denied on other grounds, the court upheld the trial court's ruling. (*Dent*, at p. 218; see *People v. Scott, supra*, 91 Cal.App.4th at p. 1206, [sufficient reasons on record constitute implicit consideration of *Windham* factors].)

The record here similarly shows that Wilson's motion was properly denied. Wilson made his *Faretta* motion on the day set for trial. The next afternoon, the trial court swore in a prospective panel. On its face, the motion was untimely. Also, the trial court had the opportunity to evaluate the quality of

6

Wilson's counsel, as Wilson made three *Marsden* motions, all of which were denied.  This shows that Wilson had adequate representation.  Also, counsel was ready to proceed to trial and voir dire was about to begin.  But the record supports a reasonable inference that granting the motion would have necessitated a continuance.  When Wilson made his *Faretta* request, he asked for standby counsel, said he was going "in blind, not knowing what's going on," and noted that he had "no paperwork.  [He didn't] have nothing."  Wilson's own statements show he was not ready for trial.  Under the totality of these circumstances, the *Faretta* motion was properly denied.

II.     Waiver of right to jury trial

Wilson contends he did not knowingly and intelligently waive his right to a jury trial on the strike and enhancement.  We disagree.

A criminal defendant's guilty plea or inculpatory admission requires personal waiver of the right to a trial by jury.  (*Boykin v. Alabama* (1969) 395 U.S. 238, 243.)  The trial court accordingly must advise a defendant of his or her rights and obtain a waiver of them before taking a plea or admission.  (*In re Tahl* (1969) 1 Cal.3d 122, 132.)  A valid waiver is one that is knowing, intelligent, and voluntary.  (*Boykin*, at p. 242.)  These advisements also must be given before the trial court may accept a defendant's admission that he or she has suffered prior felony convictions.  (*In re Yurko* (1974) 10 Cal.3d 857, 863.)

The plea bargain here required Wilson to plead no contest to the substantive forcible rape charge and to admit a prior strike and a prior serious felony.  The prosecutor advised Wilson of the substantive charges, and Wilson acknowledged he had discussed them with his counsel and that he understood he would be

7

sentenced to 17 years in prison.  The prosecutor then advised Wilson of his right to a jury trial, and Wilson said he understood and gave up that and other rights.  *After* this advisement and waiver, the prosecutor explained that Wilson's prior strike could subject him to life in prison on subsequent felonies.  The trial court repeated the offer:  six years for forcible rape, doubled to 12 years based on the strike, plus five years, for a total prison sentence of 17 years.  Wilson then pleaded no contest to count 2, forcible rape and admitted he had a prior robbery conviction and a prior first degree burglary conviction.  The trial court accepted the plea, finding that the waivers were made knowingly, freely, and intelligently.

However, because the prosecutor detailed only the substantive charges before Wilson waived his jury trial right, Wilson now argues he was never advised he had a right to a jury trial on the enhancements; therefore, his waivers and plea were not knowing and intelligent.  *People v. Forrest* (1990) 221 Cal.App.3d 675 rejected a similar contention.  The defendant in that case argued that he had to be expressly and separately advised of his right to a jury trial on prior convictions.  (*Id.* at p. 678 & fn. 3.)  *Forrest* held that nothing in applicable case law requires a separate advisement and waiver of rights where a defendant "in a single proceeding" pleads to the substantive charge and to the prior convictions.  (*Id.* at pp. 679, 681.)

We agree.  Here, as in *People v. Forrest*, *supra*, 221 Cal.App.3d at page 679, Wilson's plea to the substantive offense and to the prior convictions occurred in a single proceeding and was not separate in time.  The single, express advisement adequately advised Wilson of his constitutional rights, including the right to a jury trial on both the substantive offense and prior

8

convictions.  Therefore, the trial court correctly found that Wilson's plea was knowing and intelligent.

III.    Senate Bill No. 1393

Alternative to his argument that his admission to the five-year prior conviction must be reversed, Wilson argues that he is at least entitled to a remand so that the trial court can consider whether to strike the prior under Senate Bill No. 1393.  When Wilson was sentenced in 2017, the trial court had no discretion to strike a section 667, subdivision (a)(1), enhancement.   Senate Bill No. 1393 went into effect on January 1, 2019.  (Sen. Bill No. 1393 (2017–2018 Reg. Sess.).)  That bill amended sections 667, subdivision (a)(1), and 1385, subdivision (b), to allow a court to exercise its discretion to strike or to dismiss a serious felony prior for sentencing purposes.  (Stats. 2018, ch. 1013, §§ 1–2.)

Courts of appeal are divided as to the interplay between Senate Bill No. 1393 and sentences arising from plea agreements. The first area of disagreement concerns whether defendants like Wilson whose sentences arise from plea agreements must obtain a certificate of probable cause before raising on appeal Senate Bill No. 1393, or its counterpart Senate Bill No. 620.  (See, e.g., *People v. Stamps* (2019) 34 Cal.App.5th 117 [certificate unnecessary], review granted June 12, 2019, S255843 (*Stamps*); *People v. Baldivia* (2018) 28 Cal.App.5th 1071 [same]; *People v. Hurlic* (2018) 25 Cal.App.5th 50 [same] (*Hurlic*); but see *People v. Alexander* (2019) 36 Cal.App.5th 827, 843 (conc. & dis. opn. of Needham, J.) [certificate necessary], review granted Oct. 16, 2019, S257190; *People v. Galindo* (2019) 35 Cal.App.5th 658 [same], review granted Aug. 28, 2019, S256568; *People v. Fox* (2019) 34 Cal.App.5th 1124 [same], review granted July 31, 2019,

S256298.)  This issue is not before us, because Wilson has a certificate of probable cause.

The issue before us is whether Wilson is entitled to a remand so that the trial court can exercise its discretion whether to strike the five-year prior.  As we have said, Senate Bill No. 1393 gives trial courts discretion to strike a five-year prior, and it applies retroactively to cases, such as Wilson's, not final when the bill took effect.  (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 973.)  However, that does not mean Wilson is entitled to a remand for resentencing.  Rather, Wilson's 17-year sentence was negotiated.  A negotiated or agreed-upon sentence must be distinguished from an open plea.  In an open plea, the defendant pleads unconditionally to all charges, and is therefore exposed to the maximum possible sentence.  (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.)  While the trial court may indicate the sentence it will impose, there is no promise it will do so.  (*People v. Clancey* (2013) 56 Cal.4th 562, 570.)

In contrast, a negotiated plea is one in which the defendant pleads to specific charges and enhancements, and the trial court plays no part except to approve or disapprove the plea and to enter sentence thereon.  (*People v. Segura* (2008) 44 Cal.4th 921, 931.)  The People and the defendant negotiate the agreement.  The trial court is *not* a negotiating party to the transaction.  Once a trial court accepts a plea bargain, it is bound to impose sentence within the limits of the bargain.  If the trial court finds the bargain to be unacceptable, it has no discretion to modify it.  Its remedy is to reject it, not to violate it directly or indirectly.  (*Ibid.*; see *People v. Fox*, *supra*, 34 Cal.App.5th at p. 1138, rev. granted.)

10

Notwithstanding the limited discretion a trial court has with respect to negotiated pleas, some courts have found that Senate Bill No. 1393 gives trial courts discretion on remand to modify a negotiated plea by striking a firearm enhancement or a five-year prior. The court in *Hurlic*, *supra,* 25 Cal.App.5th at page 53 did not publish its discussion regarding remand for resentencing and instead merely stated in its introduction that being "unable to say that there is no 'reasonable possibility' that the trial court would decline to exercise its newfound sentencing discretion, we vacate the judgment and remand for a new sentencing hearing to decide whether to exercise that discretion." *Stamps*, *supra*, 34 Cal.App.5th at page 124, review granted, similarly advised that on remand the trial court could consider whether striking the five-year prior would be incompatible with the agreement on which the plea was based. If the trial court struck the enhancement, it could resentence defendant but could not impose a term in excess of the negotiated term without giving the defendant an opportunity to withdraw his plea. (*Ibid*.)

*Hurlic* and *Stamps* give trial judges a power they have never had, making them active players in plea negotiations. Neither the law nor Senate Bill No. 1393 supports giving trial judges such a role. Senate Bill No. 1393 does not empower "a trial court to disregard the express terms of a plea agreement by imposing a sentence that does not reflect an agreed-upon term for a firearm enhancement." (*People v. Fox*, *supra*, 34 Cal.App.5th at p. 1138, rev. granted; accord, *People v. Kelly* (2019) 32 Cal.App.5th 1013, 1017, review granted June 12, 2019, S255145.) Rather, the discretion afforded trial courts under Senate Bill No. 1393 arises only when a defendant is sentenced or resentenced under another law, and nothing in the bill disposes

11

of "existing limits on a trial court's discretion when sentencing a defendant convicted by plea." (*Fox*, at p. 1137.)

Our California Supreme Court decisions in *Harris v. Superior Court* (2016) 1 Cal.5th 984 and *Doe v. Harris* (2013) 57 Cal.4th 64 do not support a contrary view. The defendant in *Harris v. Superior Court* entered a negotiated plea that included dismissal of a robbery charge and allegations. Thereafter, the electorate passed Proposition 47, which reduced certain nonviolent crimes to misdemeanors and created a petitioning procedure for defendants to have their felonies reclassified. The People moved to withdraw from the plea agreement and to reinstate charges on the ground resentencing would deprive it of the benefit of the bargain. The court, however, found that Proposition 47 expressly applied to someone serving a sentence " 'whether by trial or plea.' " (*Harris v. Superior Court*, at p. 991, italics omitted.) Hence, the People were not entitled to set aside the plea agreement when defendant sought to have his sentence recalled. In contrast to Proposition 47, Senate Bill No. 1393 "does not expressly mention convictions by plea but grants discretion to the trial court to strike or dismiss such enhancements" and does not have a procedural mechanism allowing defendants to reduce their sentences. (*People v. Galindo*, *supra*, 35 Cal.App.5th at p. 671, rev. granted.) *Harris v. Superior Court* therefore does not help Wilson.

*Doe v. Harris*, *supra*, 57 Cal.4th 64 also does not help him. *Doe* said the general rule in California is that unless a plea agreement contains a term requiring the parties to apply only the law in existence when the agreement is made, parties to a plea agreement are deemed to know and to understand that the state, subject to constitutional limitations, may enact laws that will

12

affect the consequences attending the conviction entered upon the plea. (*Id*. at pp. 66–67.) "That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Id*. at p. 67.) Even so, this general rule has no applicability to Senate Bill No. 1393. There is "no language or evidence to suggest the Legislature" in enacting Senate Bill No. 1393 "intended trial courts to exercise discretion they do not have for defendants sentenced pursuant to stipulated sentences." (*People v. Galindo*, *supra*, 35 Cal.App.5th at p. 672, rev. granted.) Stated otherwise, nothing in Senate Bill No. 1393 indicates a legislative intent to change the very nature of negotiated pleas.

Permitting a trial court, under the guise of Senate Bill No. 1393, to strike a five-year prior from a negotiated plea is thus contrary to the real-world practicalities of plea bargaining. In practice, what happens in negotiated pleas is the prosecution has a number in mind. That number is not arbitrary. It is based on numerous factors that may include policies of the district attorney's office, the charged crimes and enhancements, and consultation with the victim or victims. The prosecution then crafts an offer using the various options—high, mid or low terms and enhancements—to reach that number.

With this in mind, assume that a trial court acting in the here and now, with the benefit of Senate Bill No. 1393, is presented with a stipulated plea that includes a five-year term under section 667, subdivision (a)(1). This, of course, means that the defendant has *agreed* to the five-year term. But let's indulge the fanciful notion that the trial court refuses to take the plea if it includes such a term because it would strike it. What would then happen? The trial court could not modify the plea to reduce it by

13

five years.  The trial court would have to reject the plea.  The prosecution would then find another way to get to its number, or the plea agreement would fall through.  The point is this:  what the trial court thinks the number should be is largely irrelevant, as this is not an open plea.  A trial court must accept the negotiated plea or reject the bargain outright, but it cannot come up with its own number.  The "whole point of a conditional plea, as well as the expectation of the parties who negotiate them," is "that the court would not have such discretion" to change the length of the sentence.  (*People v. Alexander*, *supra*, 36 Cal.App.5th at p. 846.)

Now consider the circumstances here.  The prosecutor's pre-preliminary hearing offer was 21 years, which Wilson did not take.  Thereafter, the prosecutor offered 17 years but explained that her unit almost never went below the pre-preliminary hearing offer.  To get the offer of 17 years, the prosecutor had to consult the victim, investigating officer, assistant head deputy and head deputy.  So, the prosecutor informed defendant, "[i]t's not getting any better than this.  I can't do any better than this.  This is as good as it gets."  Wilson, who was facing multiple life terms and decades more in state prison if convicted of all charges and allegations, took the deal.  We can infer that the trial court found the plea bargain to be consistent with the interests of justice, as the trial court approved it.  Were we to find that the trial court could on remand strike the five-year term and reduce Wilson's sentence to 12 years, this makes the plea more akin to an open one, thereby flipping longstanding law on its head.  (See *People v. Alexander*, *supra*, 36 Cal.App.5th at p. 847.)  The general rule may be that pleas, even negotiated ones, are not immune from changes in the law.  But the change in law

14

specifically effected by Senate Bill No. 1393 has no bearing on the negotiated plea in this case. Senate Bill No. 1393 is not a vehicle to allow Wilson to "whittle down" his sentence but to otherwise leave the plea agreement intact. (*People v. Kelly*, *supra*, 32 Cal.App.5th at p. 1018, rev. granted.)

Wilson is not entitled to a remand.

IV. Ability to pay hearing

Without objection, the trial court imposed on Wilson a $300 restitution fine under section 1202.4, subdivision (b), a $30 court facility assessment under Government Code section 70373, and a $40 court operations assessment under section 1465.8. Under recent authority holding that such a fine and assessments may not be constitutionally imposed absent evidence of the defendant's ability to pay them, Wilson contends that the matter must be remanded so that the trial court can conduct an ability to pay hearing. (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157.)

Unlike the defendant in *Dueñas*, Wilson did not object below to the assessments on the ground of his inability to pay and made no showing of indigence. Generally, where a defendant has failed to object to a restitution fine based on an inability to pay, the issue is forfeited on appeal. (See *People v. Avila* (2009) 46 Cal.4th 680, 729.) This general rule applies here. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126; but see *People v. Castellano* (2019) 33 Cal.App.5th 485.)

In any event, we agree with those cases finding that *Dueñas*'s due process analysis is flawed. (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320; *People v. Caceres* (2019) 39 Cal.App.5th 917; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1039 (conc. opn. of Benke, J.).) As *Hicks* notes, *Dueñas* improperly wove together two distinct strands of due process

15

precedent.  The first secures a due process based right of access to courts; but imposing fees, fines, and assessments does not deny a criminal defendant access to the courts.  The second strand erects a due process based bar to incarceration based on failure to pay criminal penalties when that failure is due to indigence, but mere imposition of those penalties does not result in incarceration for failure to pay due to indigence.  Hence, neither strand prohibits imposing assessments and fines.

Further, not all defendants are similarly situated to *Dueñas*, whose cerebral palsy rendered her unable to work and whose inability to pay fines and fees was directly related to her poverty.  (See *People v. Johnson* (2019) 35 Cal.App.5th 134.)  Here, there was no evidence Wilson lacked income-earning capacity.  Also, Wilson is serving a 17-year sentence.  Even if we assumed he suffered a due process violation when the trial court imposed a modest financial burden on him without taking his ability to pay into account, he has ample time to pay it from a readily available source of income while incarcerated, i.e., prison wages.

## DISPOSITION

The judgment is affirmed.
CERTIFIED FOR PARTIAL PUBLICATION.


DHANIDINA, J.


We concur:


EDMON, P. J.          EGERTON, J.


16